485 A.2d 359

**PENFLEX, INC., Appellee,**

v.

**Kenneth BRYSON et al. and Commonwealth of Pennsylvania Unemployment Compensation Board of Review, Appellants.**

Supreme Court of Pennsylvania.

Argued April 10, 1984.

Decided Dec. 7, 1984.

278

280

Thomas E. Seus, Jennifer Berke, Philadelphia, for Bryson, et al.

John T. Kupchinsky, Deputy Atty. Gen., Harrisburg, for Comm/UCBR.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

Appellants, former employees of the appellee, Penflex, Inc., appeal by allowance a Commonwealth Court order reversing orders entered by the Unemployment Compensation Board of Review.[1] The Board, in turn, had affirmed decisions of the Referee and the Office of Employment Security awarding unemployment compensation benefits to the appellants. We now reverse Commonwealth Court and reinstate the orders of the Review Board.

The factual circumstances surrounding the instant controversy are undisputed. The appellants were members of a collective bargaining unit represented by Plumbers Union Local 690. The Union and appellee Penflex, Inc., appellants' employer, entered into a collective bargaining agreement which expired on June 30, 1980. The parties engaged in continuing negotiations but failed to agree on the terms of a new contract before July 1, 1980.

The Union advised its members not to engage in a work stoppage. Nevertheless, the membership disregarded that advice and failed to report to work, establishing picket lines at the employer's plant beginning on July 1, 1980. The Union had not notified the Federal Mediation and Conciliation Service of the contract dispute before the work stoppage as required by Section 8(d) of the Labor Relations Management Act (Taft-Hartley Act), 61 Stat. 136 (1947), 29 U.S.C.A. § 158(d) (1976) (hereafter "LRMA").[2] [The record

---

1. On the motion of Penflex, the appeals from the Review Board's orders were consolidated by order of Commonwealth Court dated February 8, 1982.

2. Section 8(d) provides, in pertinent part, that:

   [W]here there is in effect a collective bargaining contract ... the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

   . . . .

   (3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or

does not show, however, that any notice provision was written into the collective bargaining agreement itself, nor does it show any provision in that agreement extending its term in the absence of such statutory notice.] Consequently, the employer terminated the appellants' employment on July 1, 1980 for participating in what it considered an illegal strike.[3]  On July 3, 1980, appellants offered to return to work.  However, appellee did not accept their offer.

Out of work because of this termination, appellants subsequently applied for unemployment compensation benefits pursuant to the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 751 *et seq.* (1964 & Supp.1983–84).  The Office of Employment Security initially determined that appellants' unemployment was caused by a "lockout" instituted by appellee (hereafter "employer") and that, therefore, under Sections 401 and 4(u) of the Compensation Law,[4] appellants (hereafter "employees") were eligible for compensation benefits beginning the week ending July 5, 1980.

The employer appealed to the Unemployment Compensation Board of Review arguing that, by engaging in a strike,

Territory where the dispute occurred, provided no agreement has been reached by that time; and

(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later.

3.  The Review Board affirmed the Referee's finding that the employment relationship terminated July 1, 1980.  This finding is supported by the notices of dismissal to employees contained in the record.

4.  Section 401 states that "[c]ompensation shall be payable to any employe who is or becomes unemployed" provided that certain specified conditions are met.  *See* 43 P.S. § 801.  Section 4(u) defines "unemployed" and reads, in relevant part, as follows:

An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

43 P.S. § 753(u).

its former employees were ineligible for initial benefits by virtue of Section 402(d) of the Unemployment Compensation Law which denies compensation to an employee for any week "[i]n which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lockout) at a factory, establishment or other premises at which he is or was last employed...." 43 P.S. § 802(d). The employer argued further that its employees' participation in a work stoppage in violation of Section 8(d) of the LRMA constitutes willful misconduct, that the employees were terminated on account of that willful misconduct and that, consequently, they remain ineligible for benefits under Section 402(e).[5]

Following a hearing, the Referee initially observed that, since the parties' bargaining agreement had already expired, the July 1, 1980 work stoppage was not the usual "wild-cat" strike, *i.e.*, a work stoppage which occurs in spite of a "no strike—no lockout" provision in an extant collective bargaining agreement. He therefore concluded that the strike did not constitute a breach of contract and was not illegal for that reason.

The Referee further determined that participation in a strike in violation of the federal labor statute did not establish willful misconduct within the meaning of Section 402(e) of Pennsylvania's Unemployment Compensation Law. The Referee reasoned that an employee's failure to comply with the thirty-day notice requirements of Section 8(d) results in his loss of employee status only for purposes of his LRMA-conferred right to contest his dismissal before the

5. Section 402(e), like 402(d), is one of the disqualification provisions contained in the Law and states that:

An employe shall be ineligible for compensation for any week—

.    .    .    .

In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act....

43 P.S. § 802(e).

NLRB as an unfair labor practice.[6] Therefore, the Referee refused to rule that, in effect, any employee who has engaged in a work stoppage not protected by the LRMA automatically forfeits his right to benefits pursuant to Section 402(e) of Pennsylvania's Unemployment Compensation Law.

In addition, the Referee noted that if the employees' strike were the only factual circumstance presented for his consideration, they would be ineligible for benefits under Section 402(d). However, the Referee further noted that the employer terminated the employees on the same day the work stoppage began. Accordingly, he ruled that the cause of the employees' unemployment was not a work stoppage resulting from a labor dispute, but, instead, their discharge from employment. Therefore, he affirmed the Office of Employment Security's compensation award.

The Review Board agreed with the Referee's reasoning and affirmed his determination. In short, the compensation authorities determined that the failure to comply with the notice provision of the LRMA, Section 8(d) before terminating the contract did not, on these facts, constitute willful misconduct under Section 402(e) of our Unemployment Compensation Law. The employer then appealed the Board's decision to Commonwealth Court.[7] Commonwealth Court held that the work stoppage initiated by the employees did constitute willful misconduct and concluded, therefore, that they were ineligible for compensation benefits under Section 402(e).

6. In this connection we note that federal labor law generally permits replacement of strikers without regard to whether their strike action is, or is not, an unfair labor practice. Thus, economic strikers may be replaced and if so replaced, lose any expectation of continuing employment they may have had when they went out on strike. *N.L.R.B. v. Fleetwood Trailer Co.*, 389 U.S. 375, 379, 88 S.Ct. 543, 546, 19 L.Ed.2d 614 (1967). Only if the work stoppage by the workers is in response to employer action constituting an unfair labor practice, or otherwise illegal under federal law, do they have a federal right to continued employment. *Mastro Plastics Corp. v. N.L.R.B.*, 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309 (1956).

7. Commonwealth Court granted the employees' petition to intervene *nunc pro tunc* by order dated March 8, 1982.

Commonwealth Court acknowledged that it was not confronted with a wildcat strike and that only such strikes had been held to be illegal work stoppages amounting to willful misconduct under prior decisional law. However the court, citing *Houck v. Com., Unemployment Compensation Board of Review*, 45 Pa. Commonwealth Ct. 587, 589, 405 A.2d 1062, 1064 (1979), stated that, under the law, willful misconduct includes "a disregard of standards [of behavior] which the employer has a right to expect of his employee" and that, by striking in violation of Section 8(d), the employees here demonstrated such disregard. *See Weimer v. Unemployment Compensation Board of Review*, 176 Pa. Superior Ct. 348, 354, 107 A.2d 607, 610 (1954).

Commonwealth Court reasoned that:

[W]here, as here, Employer and Union have undertaken to engage in collective bargaining under the aegis of the NLRA, then the Employer has a right to expect that the notice provisions of Section 8(d) will be complied with prior to an employee strike.

. . . . .

Furthermore, ... if we were to accept the Claimants' and Board's arguments, then a striker, *ineligible* under the provisions of Section 402(d) of the Law, would become *eligible* for benefits upon the exercise by the employer of its right to discharge the striker for violations *by the striker* of Section 8(d) of the NLRA. We therefore would be encouraging strikers to violate Section 8(d). Such a result would, we believe, so inhibit the exercise by an employer of its federal rights that a serious question of invalidity under the Supremacy Clause of the United States Constitution would be raised.

73 Pa. Commonwealth Ct. 111, 116–17, 457 A.2d 234, 236 (1983) (citations and footnote omitted) (emphasis in original).

We disagree with Commonwealth Court's determination that the employees here exhibited a disregard of behavioral standards which their employer could reasonably expect of them and now hold that their participation in a work stoppage in violation of Section 8(d) of the LRMA does

not constitute willful misconduct within the meaning of Section 402(e) of our Unemployment Compensation Law. In reaching our decision, we are mindful of the circumscribed scope of appellate review.

It is now axiomatic in an unemployment compensation case, that the findings of fact made by the Board, or by the referee as the case may be, are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings. (citations omitted) The appellate court's duty is to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony, to see if substantial evidence for the Board's conclusion exists.

*LeGare v. Com., Unemployment Compensation Board of Review,* 498 Pa. 72, 76, 444 A.2d 1151, 1152–53 (1982) (quoting *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 355, 378 A.2d 829, 831 [1977] ). Our review is further constrained by policy considerations underpinning the Unemployment Compensation Law. "This Act was designed to alleviate the rigors of unemployment and most specifically to assuage the distress of the individual unemployed worker." *Gladieux Food Services, Inc. v. Unemployment Compensation Board of Review,* 479 Pa. 324, 330, 388 A.2d 678 (1978). For this reason, the eligibility sections of the law must be liberally interpreted to provide the maximum amount of benefits allowable under the statute to a claimant who has experienced involuntary unemployment. *Renne v. Unemployment Compensation Board of Review,* 499 Pa. 299, 305 n. 4, 453 A.2d 318, 321 n. 4 (1982). Conversely, disqualification provisions, such as Section 402(e), should be narrowly construed and a claimant must not be denied compensation unless he is unequivocally excluded by the plain language of these provisions. *See Penn Hills School District v. Unemployment Compensation Board of Review,* 496 Pa. 620, 625, 437 A.2d 1213, 1215 (1981); *Gladieux,* 479 Pa. at 331, 388 A.2d at 682.

■ Given the limited range of our inquiry, we turn to the matter before us. This case involves the interrelationship between Sections 402(d) and 402(e) of the Pennsylvania Unemployment Compensation Law, 43 P.S. § 802(d) and 802(e), respectively. Ordinarily, where a claimant is temporarily "unemployed" as a result of his involvement in a labor-related activity, only Section 402(d) governs the determination as to whether he is disqualified from receiving compensation benefits. However, that provision applies only in the context of an ongoing employer-employee relationship. A striking employee, strictly speaking, never leaves his employment.

> A striker continues as an employee during the strike and only removes himself from actual labor. He retains his status at all times and again becomes a working employee when the strike is terminated.

*Pramco v. Unemployment Compensation Board of Review*, 396 Pa. 560, 564, 154 A.2d 875, 876–77 (1959). *See Sprague & Henwood, Inc. v. Unemployment Compensation Board of Review*, 207 Pa.Superior Ct. 112, 116, 215 A.2d 269, 272 (1965).

■ Section 402(d) applies only if employment terminates as a result of a labor dispute. In interpreting the causation requirement precedent to that Section's application to unemployment we have held that we "confine our inquiry to the *immediate* cause and avoid the maze that would result from an attempt to ascertain indirect or chronologically remote causes." *Gladieux Food Services, Inc. v. Unemployment Compensation Board of Review*, 479 Pa. at 330, 388 A.2d at 681 (emphasis added). Where the employer-employee relationship is permanently severed, the employee no longer has any real interest in the outcome of the labor dispute.[8] Accordingly, the dispute is not the immediate

---

8. Section 402(d) states that:

> [T]his subsection shall not apply if it is shown that (1) [*the claimant*] *is not participating in, or directly interested in, the labor dispute which caused the stoppage of work,* and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work,

cause of his unemployment and the disqualification set forth in Section 402(d) is inapplicable to him. *See Sprague & Henwood, Inc. v. Unemployment Compensation Board of Review,* 207 Pa.Superior Ct. 112, 215 A.2d 269 (1965); *Oluschak v. Unemployment Compensation Board of Review,* 192 Pa.Superior Ct. 255, 263, 159 A.2d 750, 754 (1960).[9]

■ Nevertheless, Section 402(d) does not "immunize an employee during a work stoppage in a labor dispute from the consequences of his willful misconduct connected with his work involving flagrant breach of duty to his employer and to his union." *Yellow Cab Co. v. Unemployment Compensation Board of Review,* 170 Pa.Superior Ct. 625, 631, 90 A.2d 599, 602 (1952).[10] *See H.J. Heinz Co. v. Unemployment Board of Review,* 172 Pa.Superior Ct. 324,

and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested, in the dispute.

43 P.S. § 802(d) (emphasis added).

9. For example, in *Oluschak v. Unemployment Compensation Board of Review,* 192 Pa.Superior · Ct. 255, 263, 159 A.2d 750, 754 (1960), Superior Court held that a striking employee, ineligible for benefits under Section 402(d), remains ineligible under that provision, even if he presents evidence to show that he has accepted alternative employment during the work stoppage unless he also establishes that he *permanently* severed his employment with his former employer.

10. In determining that the Legislature intended 402(e) to apply, without exception, to all provisions of the Unemployment Compensation Law, the Court in *Yellow Cab* reasoned that:

Section 402(d) in its original form was added to the Unemployment Compensation Law by the Act of April 23, 1942, P.L. 60. And this provision, intended to discourage strikes financed by compensation funds, was a part of the law when § 402(e) was enacted by the amendment of May 29, 1945, P.L. 1145. The amending Act denying compensation for unemployment due to discharge for "willful misconduct" is couched in general language, clearly and unmistakably intended to apply to the Unemployment Compensation Law in all of its provisions, without exception, including § 402(d). "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning": *Com. ex rel. Cartwright v. Cartwright et al.,* 350 Pa. 638, 645, 40 A.2d 30.

*Id.*

329, 94 A.2d 82, 84 (1953). Accordingly, "[a]n employe ... may forfeit his right to unemployment compensation because of willful misconduct even though the misconduct which induced his discharge by the employer is related to a stoppage of work involved in a labor dispute." *Weimer v. Unemployment Compensation Board of Review,* 176 Pa. Superior Ct. at 354, 107 A.2d at 610 (quoting *Yellow Cab Co.,* 170 Pa.Superior Ct. at 631, 90 A.2d at 602).

Accordingly, where a claimant becomes temporarily absent from work as a result of a labor dispute, other than a lockout, he is unquestionably ineligible for benefits under Section 402(d) during the time he is involved in the work stoppage. However, if the claimant's employer terminates his employment, the labor dispute which resulted in the work stoppage no longer directly concerns him. The question then becomes whether he was fired for willful misconduct. *Houck v. Unemployment Compensation Board of Review,* 45 Pa. Commonwealth Ct. 587, 589, 405 A.2d 1062, 1064 (1979). Generally, if the claimant's participation in the work stoppage constituted willful misconduct, he remains ineligible for benefits following his discharge from employment under Section 402(e); otherwise, his disqualification under Section 402(d) is lifted and he is entitled to compensation.[11]

The specific question presented here for our consideration is one of first impression. We are asked to decide whether employee participation in a strike, which is purportedly in violation of a LRMA provision designed to reduce strike incidence, constitutes willful misconduct under

11. As a matter of first impression, the plain language of the statute would not be entirely clear with respect to whether a striking employee, who is clearly ineligible for benefits under Section 402(d), becomes eligible for unemployment compensation on being dismissed from employment for participating in the strike. However, a long line of decisions have held that a striking employee is no longer subject to disqualification under Section 402(d) following his dismissal and becomes eligible for benefits unless his dismissal was for willful misconduct within the meaning of Section 402(e). *See* cases cited at 288, *infra.* These cases elicited no response by way of amendment or clarification from the Legislature.

Section 402(e) of the Pennsylvania Unemployment Compensation Law. "Willful misconduct" may be defined as:

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employe, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer. *Detterer Unemployment Compensation Case*, 168 Pa.Superior Ct. 291, 294, 77 A.2d 886; *Sopko Unemployment Compensation Case*, 168 Pa.Superior Ct. 625, 82 A.2d 598; *Krawczyk Unemployment Compensation Case*, 175 Pa.Superior Ct. 361, 104 A.2d 338.

*Weimer v. Unemployment Compensation Board of Review*, 176 Pa.Superior Ct. at 354, 107 A.2d at 610. Employee conduct which renders a claimant ineligible for benefits under Section 402(e) must be *willful* and "not merely conduct which *appears* to be contrary to the employer's interests." *Unemployment Compensation Board of Review v. National Aluminum Co.*, 22 Pa. Commonwealth Ct. 519, 522, 349 A.2d 527, 529 (1975) (emphasis in original).

██ Our courts have consistently held that employees who participate in a work stoppage in violation of the terms of an existing collective bargaining agreement are deemed to have engaged in willful misconduct under Section 402(e) and are, therefore, ineligible to receive unemployment compensation benefits if they are terminated. *Progress Manufacturing Co. v. Unemployment Compensation Board of Review*, 406 Pa. 163, 165–66, 176 A.2d 632, 633 (1962); *Weimer v. Unemployment Compensation Board of Review*, 176 Pa.Superior Ct. at 353, 107 A.2d at 609; *American Viscose Corp. v. Unemployment Compensation Board of Review*, 173 Pa.Superior Ct. 251, 253, 98 A.2d 257, 258 (1953); *H.J. Heinz Co. v. Unemployment Compensation Board of Review*, 172 Pa.Superior Ct. 324, 329, 94 A.2d 82, 84 (1953); *Bays v. Com., Unemployment Compensation Board of Review*, 62 Pa. Commonwealth Ct. 421, 423, 437 A.2d 72, 73 (1981); *Moran v. Com., Unemployment*

*Compensation Board of Review,* 42 Pa. Commonwealth Ct. 195, 200, 400 A.2d 257, 259 (1979). We approve those decisions.

■ Conversely, where there is no existing bargaining agreement, the courts have held that a work stoppage by employees is not considered willful misconduct making the strikers ineligible for unemployment compensation benefits if terminated. *Birdsboro Corp. v. Com., Unemployment Compensation Board of Review,* 59 Pa. Commonwealth Ct. 462, 466 n. 4, 430 A.2d 361, 363 n. 4 (1981). *See Sprague & Henwood, Inc. v. Unemployment Compensation Board of Review,* 207 Pa.Superior Ct. 112, 215 A.2d 269 (1965).

■ In the instant case, the parties' collective bargaining agreement had expired prior to the employees' work stoppage. Therefore, the employees' strike was not a breach of contract and, thus, was not, for that reason, illegal. However, their union's failure to give the thirty-day notice required by Section 8(d) of the LRMA constitutes an apparent violation of federal labor law.[12] The employer argues that the employees' participation in a strike which is apparently "illegal" under federal law must be deemed "willful misconduct" under the Pennsylvania Unemployment Compensation Law. We disagree. Appellee directs our attention to *Houck, supra,* in support of its position. However,

12. It appears that if a union does not notify the Federal Mediation and Conciliation Service and any state mediation agencies having jurisdiction over the dispute in question, a strike to compel modification of the contract is illegal under federal law and the strikers are subject to dismissal. *United Furniture Workers v. National Labor Relations Board,* 336 F.2d 738 (D.C.Cir.), *cert. denied,* 379 U.S. 838, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964). As noted at 283, n. 5, however, workers who give notice and then strike to gain concessions from their employer are also subject to replacement as economic strikers. Thus, analysis under federal law in terms of "legal" and "illegal" strikes is not particularly helpful. Federal law also distinguishes between economic and unfair labor strikes. These distinctions are roughly analogous to those between "strike" and "lockout" as used in interpreting Section 402(d) of our Unemployment Compensation Law. Since, however, this is a willful misconduct case under Section 402(e) and not a work stoppage case under Section 402(d), the federal distinctions are not greatly material to this case.

that case is clearly distinguishable on its facts from the one now before us.

There, employees struck in support of their efforts to have their employer recognize a particular union local as their exclusive bargaining representative. At the time, a petition to so certify the union was pending before the Pennsylvania Labor Relations Board. The employees were immediately advised that further unauthorized absences would result in dismissal. Several days later the employer discharged the strikers. In addition, the employer rejected the employees' subsequent unconditional offer to return to work. Commonwealth Court affirmed the Review Board's determination of ineligibility under Section 402(e) concluding that:

> Willful misconduct includes a disregard of standards which an employer has a right to expect of an employee. Where a method exists for conclusively establishing rights which exist by virtue of statute or contract, we believe that, absent bad faith, an employer ordinarily has a right to expect his employees to utilize such methods rather than to resort to a disruptive strike.

45 Pa. Commonwealth Ct. at 589–90, 405 A.2d at 1064 (citations omitted). In *Houck* the strike was unnecessary as the employees could have achieved their goal by complying with the certification procedures prescribed by the Pennsylvania Labor Relations Act, 43 P.S. § 211.1 *et seq.* More significantly, the employees chose to disregard their employer's directive to return to work on pain of dismissal. We considered the employees' refusal to return to work a flagrant disregard of their employer's interests.

In both *Houck* and the instant case, the striking employees were not bound by the terms of a collective bargaining agreement. However, unlike the employees in *Houck,* the appellants here had no available statutory procedures by which they could achieve their demands. The work stoppage was the only means at their disposal by which they could show support for the union's position at the bargaining table. Moreover, the employer at no time

warned appellants that continued participation in the work stoppage could result in termination. Finally, here the contract itself apparently contains no language which would give that warning. In the absence of such language, we do not believe the discharged workers were precluded from unemployment compensation benefits by their union's failure to give a notice, required only by federal law, that a contract for a term certain would not be extended beyond that term.

■ The appellee argues that there is no meaningful distinction between participation in a strike in disregard of procedures prescribed by state statute and a strike which contravenes a federal labor statute. We disagree. To hold that participation in a strike in contravention of federal law constitutes willful misconduct under Section 402(e) would require the courts, in every case, to determine whether an alleged infraction of federal law in fact occurred and, if so, whether the strike must be deemed illegal on account of the infraction. Any such attempt to construe and apply federal law in these situations would constitute an impermissible intrusion into the regulatory jurisdiction of the National Labor Relations Board under Section 8 of the LRMA.

■ In *New York Telephone Co. v. New York State Department of Labor,* 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979) (plurality opinion, judgment of the court announced by Mr. Justice Stevens), the United States Supreme Court held that a New York statute authorizing unemployment compensation benefits to strikers did not impermissibly conflict with collective bargaining policy favoring the free play of economic forces established in the federal labor statutes and, therefore, did not violate the Supremacy Clause.[13] *See* United States Constitution Art.

---

13. In *Unemployment Compensation Board of Review v. Sun Oil Co.,* 476 Pa. 589, 383 A.2d 519 (1978), *appeal dismissed,* 440 U.S. 977, 99 S.Ct. 1782, 60 L.Ed.2d 237 (1979), this Court, after a review of pertinent federal law, rejected a preemption challenge to Section 402(d) holding that the provision did not violate the Supremacy Clause by allowing unemployment compensation benefits to "locked out" employees while denying the same benefits to strikers. *Accord Gladieux*

IV, cl. 2. More important for our purposes is the *dictum* contained in the opinion. That *dictum* is directly applicable to the case hereunder review:

> [W]e reject petitioners' contention that the NLRA at the least forbids the States from awarding benefits to participants in *illegal* strikes. See *Communication Workers* of *American (New York Telephone Co.)*, 208 N.L.R.B. 267 (1974) (declaring part of the strike involved in this case illegal). Because such a rule would inevitably involve the States in ruling on the legality of strikes under § 8, it would invite precisely the harms that the pre-emption doctrine is designed to avoid.

*Id.* at 529, n. 15, 99 S.Ct. at 1335 (emphasis in original).

▮▮▮ Furthermore, our determination that the employees' striking activities in the matter at hand were not willful misconduct is not unfair or impermissibly discriminatory. A reading of the disqualification provisions of the Unemployment Compensation Law establishes that the Legislature intended to treat labor activities differently than individual conduct or other concerted activity.

For example, Section 402(a) provides that an employe shall be ineligible for compensation for any week:

> In which his unemployment is due to his failure, without good cause, either to apply for suitable work ... or to accept suitable work when offered to him by the employment officer or by any employer, irrespective of whether or not such work is in "employment" as defined in this act.... [H]owever this ... shall not cause a disqualification of a waiting week or benefits ... when work is offered by his employer and he is not required to accept the offer pursuant to the terms of the labor-management contract or agreement, or pursuant to an established employer plan, program or policy....

*Food Services, Inc. v. Unemployment Compensation Board of Review*, 479 Pa. 324, 326 n. 2, 388 A.2d 678, 679 n. 2 (1978). The decisions in these cases, and in *New York Telephone Co.*, are dispositive of the preemption issue raised, *sua sponte*, by Commonwealth Court. *See supra* p. 282.

43 P.S. § 802(a) (Supp.1983–84). Section 802(a) must be read in conjunction with Section 4(t) which defines "suitable work" and which states that:

[N]o work shall be deemed suitable in which ... the position offered is vacant, due directly to a strike, lockout, or other labor dispute....

43 P.S. § 753(t). *See Quaker Oats v. Com., Unemployment Compensation Board of Review,* 65 Pa. Commonwealth Ct. 33, 442 A.2d 367 (1982); *Lebanon Steel Foundry v. Com., Unemployment Compensation Board of Review,* 50 Pa. Commonwealth Ct. 441, 413 A.2d 34 (1980). Similarly, Section 402(b)(1), the provision disqualifying an employee who voluntarily quits, states, in so many words, that an individual employee absent from work due to a work stoppage existing because of a labor dispute may not be deemed to have left his employment without good cause. 43 P.S. § 802(b)(1).

Under our law, including the Unemployment Compensation Law, the strike and lockout are expressly recognized as legitimate bargaining weapons in the economic tug-of-war between employer and employee. *Mackintosh-Hemphill Div., E.W. Bliss Co. v. Unemployment Compensation Board of Review,* 205 Pa.Superior Ct. 489, 495–96, 211 A.2d 23, 27 (1965). During that tug-of-war each side tries to win concessions from the other while at the same time maintaining the expectation that the dispute will be resolved eventually and operations at the workplace will return to normal. Involvement in a strike, absent a prohibition contained in a valid bargaining agreement, may not properly be viewed as a disregard of standards of behavior which an employer has a right to expect. Workers have the right to engage in a lawful strike [14] and, consequently, they

14. *See* Sections 5, 6 and 37 of the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, No. 294 (codified at 43 P.S. § 211.5, 211.6 and 211.37, respectively [1964] ). *See also Tate v. Philadelphia Transportation Co.,* 410 Pa. 490, 498, 190 A.2d 316, 320 (1963) ("a *peaceful strike, like peaceful picketing, conducted in a lawful manner and for a lawful purpose is lawful* even though it shuts down, bankrupts or puts out of business the company or firm which is struck and

retain a reasonable expectation of continued employment during the work stoppage. Subsequent loss of employee status is not in any real sense voluntary. Accordingly, we find no statutory policy considerations which militate against our holding today that appellants were not discharged from employment on account of willful misconduct. Indeed, the unemployment compensation statute, as a whole, appears to require such treatment.

Our holding today is a very narrow one which will not apply in most labor disputes. Specifically, employees are still ineligible for compensation benefits if they are dismissed for participation in a wildcat strike or one that otherwise contravenes the laws of this state or where, during the course of a legal strike, the employer directs his employees to return to work or suffer dismissal. In these two situations the errant employees have no reasonable expectation of continued employment and it is not unfair to conclude, when their improper labor activities culminate in discharge, that their unemployment has been voluntarily induced.

The order of Commonwealth Court is reversed and the orders of the Unemployment Compensation Board of Review are reinstated.

LARSEN, J., files a Concurring Opinion.

ZAPPALA, J., files a Concurring and Dissenting Opinion.

NIX, C.J., files a Dissenting Opinion.

LARSEN, Justice, concurring.

I agree with both the Majority Opinion and Dissenting Opinion that appellants are entitled to unemployment compensation and therefore concur in the result.

even though it also causes enormous and irreparable damage to hundreds or thousands of innocent persons who are not involved in the strike") (emphasis in original).

ZAPPALA, Justice, concurring and dissenting.

While I join in the legal analysis of the dissenting opinion authored by Mr. Chief Justice Nix, I disagree with him as to when the status of employer-employee terminated. My review of the record indicates that the Unemployment Compensation Board of Review found as a fact that the employees were terminated on July 1, 1980. Therefore, I find it unnecessary to remand for that determination and concur in the result reached by the majority.

NIX, Chief Justice, dissenting.

In my judgment the majority's analysis fails to precisely identify the operative facts upon which the resolution of this issue should turn. Moreover, a critical fact, i.e., the point in time the underlying employment relationship between Penflex, Inc. and the members of the bargaining unit herein involved terminated, does not appear in the record before us.[1] It is my opinion the record clearly establishes

---

1. Although it appears from this record that the parties were not able to agree upon a new collective bargaining agreement, the record before us is inadequate to determine when that fact occurred. The majority suggests that the termination of the employment relationship may have occurred when the employer on July 1st notified the then striking employees of their dismissal. However, there are other facts in the record which positively establish that both negotiations and the prospect of continued future employment continued beyond July 1st. For example, the record reflects further contacts between the employees and management on July 3rd, July 7th, and during the week of July 8th. Most persuasive is a stipulation that is found in the record of *In Re: Howard W. Anderson*, (one of the claimants) Appeal No. 80-1-C-478, during a hearing on November 7, 1980 before a referee wherein it is noted:

    As a result of that discussion, we're going to attempt to stipulate to some of the basic facts that all of the claimants were employees of Penflex, Inc., and all were members of bargaining unit which was represented by Plumber's Union Local 690, which union was the bargaining agent for the unit with Penflex. That a collective bargaining agreement had been in effect between union and company, which had an expiration date of June 30, 1980. Negotiations had been held between the union and the company, *which negotiations are continuing*. However, the terms of the new agreement to succeed the expiring collective bargaining agreement have not been agreed upon.

    *Id.* at 1 (JC1) (emphasis added).

that the work stoppage was initiated by the employees on July 1, 1980 and consequently under section 402(d) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(d), they were not entitled to unemployment benefits during the period of that labor dispute.

At some later point the underlying employment relationship between Penflex, Inc. and the members of this bargaining unit terminated. From the moment of that termination the former employees would then have been eligible for benefits, unless they had gained employment elsewhere. Although I am of the view that the members of the bargaining unit did participate in a strike, thus rendering them ineligible for benefits during that strike, I share with the majority the opinion that their activities did not constitute willful misconduct that would bar their recovery under section 402(e) once the underlying employment relationship was severed. 43 P.S. § 802(e).

I therefore would remand the matter to the Unemployment Compensation Board of Review for purposes of determining when the expectation of continued employment ended and the underlying employment relationship was severed. I would direct the Board to award benefits from that date, unless other impediments, then present, precluded such an award.

It is not unusual in the area of labor-management relations that differences arise in the negotiations for collective bargaining agreements. Unfortunately there are times when those differences are irreconcilable. Fortunately, in most instances they are resolved, a new agreement is reached and the differences are accommodated. The avoidance of a work stoppage during these trying and traumatic periods is in the best interests of all. However, there are situations where a strike or a lockout is the only vehicle capable of encouraging serious negotiations. Nevertheless,

From everything above it is clear there was an expectation of continued future employment long beyond the July 1st date seized upon by the majority.

it is in the best interest of society to design its rules governing this segment of our activities to encourage the resolution of these disputes without a work stoppage and the concomitant unemployment. Most importantly, a permanent rupture of the employment relationship is to be avoided whenever possible. The legislature was obviously mindful of these societal objectives in designing a scheme for the payment of employment benefits. The judiciary has an equal responsibility in interpreting those provisions to give full force and effect to that design.

The majority's analysis in this case appears to turn upon the action of the employer taken in response to the employees' participation in a strike. In so doing, it obfuscates what I consider to be the critical issues in this case. Under these facts a clear distinction has to be drawn between the collective bargaining contract which sets the terms and conditions of employment and the underlying employment relationship. Moreover, the majority fails to consider the *Vrotney* rule[2] and its application to the facts of this case.

A collective bargaining agreement does not create, nor does its termination destroy the employer-employee relationship. Rather, a collective bargaining agreement merely establishes the terms and conditions which will govern that relationship during the life of the agreement. In *J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed.2d 762 (1944), the United States Supreme Court observed:

> Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what has often

2. *See Vrotney Unemployment Compensation Case*, 400 Pa. 440, 444–445, 163 A.2d 91, 93–94 (1960).

been called a trade agreement rather than a contract of employment.

*Id.* at 334–35, 64 S.Ct. at 578–79.

*Accord, Amalgamated Association of Street, Electric Railway and Motor Coach Employ. of America, Div. 85 v. Pittsburgh Railways Co.,* 393 Pa. 219, 223, 142 A.2d 734, 736, *cert. denied,* 358 U.S. 882, 79 S.Ct. 123, 3 L.Ed.2d 112 (1958). Thus, during a work stoppage precipitated by the inability of the parties to negotiate a new collective bargaining agreement prior to the expiration of the old, the employer-employee relationship continues; only actual work has ceased. From the expiration of the collective bargaining agreement, during the period of the negotiation of the new contract, the underlying employment relationship continues and is restructured by the terms of the new collective bargaining agreement that results.

By promoting continuation of the commercial enterprise during the period between expiration of a collective bargaining agreement and the negotiation of its successor, application of the *Vrotney* rule avoids the commercial, economic and social dislocation that invariably ensues from production interruptions. *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 444–445, 163 A.2d 91, 93–94 (1960). *Accord, Fairview School District v. Commonwealth, Unemployment Compensation Board of Review,* 499 Pa. 539, 454 A.2d 517 (1982); *Borello v. Unemployment Compensation Board of Review,* 490 Pa. 607, 417 A.2d 205 (1980); *Unemployment Compensation Board of Review v. Sun Oil Co.,* 476 Pa. 589, 383 A.2d 519 (1978), *appeal dismissed,* 440 U.S. 977, 99 S.Ct. 1782, 60 L.Ed.2d 237 (1979); *Philco Corporation v. Unemployment Compensation Board of Review,* 430 Pa. 101, 242 A.2d 454 (1968). *Vrotney* fosters maintenance of the status quo established under the terms and conditions of the expiring contract during the negotiation period. As we recently emphasized in *Local 730, United Assoc. of Journeymen and Apprentices of the Plumbing and Pipe-fitting Industry v. Commonwealth, Unemployment Compensation Board of Review (Trane),*

505 Pa. 480, 480 A.2d 1000 (1984), the sole test for determining whether a work stoppage is a lockout or a strike for purposes of entitlement to unemployment compensation benefits is which side, union or management, first refused to continue operations under the status quo.[3] *Trane, supra*, 505 Pa. at 484, 480 A.2d at 1002.

A majority of this Court unfortunately deviated from *Vrotney's* clear and easily applied rule in *High v. Commonwealth, Unemployment Compensation Board of Review*, 505 Pa. 379, 479 A.2d 967 (1984), embracing a theory which permits a shifting of the initial responsibility for the work stoppage on the basis of subsequent offers to restore the status quo.[4] As pointed out by Justice Larsen in his dissent in *High,*

3. The initial acceptance of the *Vrotney* standard was based on its easy application on the administrative level and at the same time it served the basic policy concerns involved. *Vrotney* was designed to encourage the continuation of the work relationship under terms previously agreed to by the parties during that difficult period between the expiration of the old agreement and before the new terms of employment had been agreed upon. *Fairview School District v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, supra*, 499 Pa. at 546, 547, 454 A.2d at 521; *Unemployment Compensation Board of Review v. Sun Oil Co., supra*, 476 Pa. at 595, 383 A.2d at 522; *cf. Borello v. Unemployment Compensation Board of Review, supra*, 490 Pa. at 612, 417 A.2d at 208 (1980). Moreover, the administrative units involved in the compensation eligibility decision would have little difficulty in resolving the simple factual question of who first departed from the terms of the expired agreement. *Unemployment Compensation Board of Review v. Sun Oil Co., supra*, 476 Pa. at 598, 383 A.2d at 522. Once we complicate that decision with requirements of ascertaining the good faith or the justification of a party altering the former terms, we create a standard infinitely more difficult to administer, without a corresponding benefit being derived for such a modification.
*Local 730, United Assoc. of Journeymen and Apprentices of the Plumbing and Pipe-fitting Industry v. Commonwealth, Unemployment Board of Review*, 505 Pa. 480, 486–487, 480 A.2d 1000, 1003–1004 (1984).

4. We notice that the majority ignores the *High* decision in its analysis in this case. If it had been employed the employees would have been ineligible when they refused to work on July 1st and would have regained eligibility when the employer refused to accept their offer to return on July 3rd.

Responsibility for the work stoppage, and thus, the determination of whether the stoppage is a strike or a lockout is established at its inception. Actions taken after the cessation of work activity cannot erase the initial responsibility and place the parties in the positions they previously occupied. If it were otherwise, responsibility for a work stoppage would be subject to repeated change. A lockout on Monday could be a strike on Wednesday, a lockout again on Friday, and so on and so forth. This would tend to encourage parties to continually jockey for position at the expense of sincere negotiations toward a settlement.... Fixing responsibility at the outset forces the parties to act responsibly, sincerely and in good faith at the initial stages of a potential work stoppage.

*Id.*, 505 Pa. at 390, 479 A.2d at 972–73. (Larsen, J., dissenting, joined by Nix, C.J., and Zappala, J.)

Thus, the salutary rule of *Vrotney*, heretofore consistently applied by this Court, should remain the exclusive test for determining entitlement to benefits.

*Vrotney*, of course, applies to situations where the underlying employment relationship continues to exist. In a situation where the employer-employee relationship is totally severed following the expiration of a collective bargaining agreement, the person seeking benefits is clearly "unemployed" as that term is defined in section 4 of the Act. 43 P.S. § 753(u) (1964). Whereas the *Vrotney* rule should be applied in such a manner that the initial responsibility for the work stoppage controls the status of the employee for unemployment compensation purposes during that period where the employment relationship continues, a different situation is presented the moment the underlying contract of employment is severed. In that instance the employees are unemployed and their status for unemployment compensation purposes is properly at that point reevaluated. Absent a showing that the severance of the employment relationship resulted from the willful misconduct on the

part of the employee, he or she would be eligible for benefits. Section 402(d) and *Vrotney* presuppose the continuation of the underlying employer-employee relationship and thus do not extend to individuals who are no longer employed.[5]

In the instant case the status quo was first disrupted by the employees when they withheld their services and set up picket lines, contrary to the advice of their union, on July 1, 1980. Thus under *Vrotney* the work stoppage was a strike and the employees are not entitled to benefits for the period during which they refused to work. Their July 3, 1980 offer to return to work and its rejection by the employer should not affect that determination. Here, however, at some point further negotiations terminated and the underlying employment relationship ended. Such altered condition would then justify a reevaluation of the claimant's status for unemployment compensation purposes.

On this record, it cannot be determined precisely when negotiations were ultimately abandoned and the prospect of a return to work no longer existed. A remand to the Board for that purpose is proper. As of that time section 402(d) was no longer applicable, since the cessation of work was no longer due to a labor dispute, but rather, from that point, resulted from the severance of the employment relationship. Further, I agree with the majority's conclusion that this record does not establish a showing that the discharge resulted from willful misconduct as described in subsection 402(e).

Accordingly, I would remand with instructions that the instant appellants should be determined to be entitled to benefits from the date that it is found that the employment relationship ceased, if they otherwise qualified for benefits.

5. Where unemployment results from "discharge" or severance from employment, the *Vrotney* analysis is inapplicable by definition because that analysis is utilized only where "unemployment is due to a stoppage of work which exists because of a labor dispute...." 43 P.S. § 802(d).