547 A.2d 513

Angie DiVergigelis, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Kelliann Ryan, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Helen Gallo, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Leo Ward, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Sarah Long, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs June 1, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Basil L. Merenda,* with him, *Michael N. Katz,* and *Robert G. Rothstein, Meranze and Katz,* for petitioners.

*Gary L. Kelley,* Assistant Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

No appearance for intervenor.

OPINION BY SENIOR JUDGE BARBIERI, September 14, 1988:

Angie DiVergigelis, Kelliann Ryan, Helen Gallo, Leo Ward, and Sarah Long (Claimants) appeal orders of the Unemployment Compensation Board of Review (Board) denying them benefits on account of willful mis-

conduct pursuant to Section 402(e) of the Unemployment Compensation Law.[1]

Claimants were all terminated from their employment[2] with M.L. Dessert Corporation (Employer) for their alleged participation in an illegal strike at the Employer's plant at Seventh Street and Lindley Avenue in Philadelphia.

Claimants are all members of the Bakery, Confectionery and Tobacco Workers' International Union AFL-CIO-CLC Local No. 6 (Union). Article 11 of the collective bargaining agreement[3] between the Employer and the Union prohibited strikes, lockouts, work interruptions, boycotts, temporary walkouts or production slowdowns and provides for the immediate discharge of any employee who violates this provision.

By letter dated April 17, 1986,[4] a shop steward was suspended pending dismissal for "verbally and physically assaulting" one of the Employer's vice presidents. The Employer's assistant production manager testified that there were rumors that the plant employees were planning a "walkout" on Saturday, April 19, 1986, in response to this disciplinary action. No walkout in fact occurred on Saturday. The assistant plant manager testified further that at approximately 10:00 a.m. on Sunday, April 20, 1986, the business agent for the Union came into the plant and was granted permission to speak to

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

[2] Claimants DiVergigelis, Ryan and Long were employed as machine operators, Claimant Gallo was employed as a line worker and Claimant Ward was a sanitation department employee.

[3] The collective bargaining agreement in question was originally between Mrs. Smith's Pie Company and the Union and covered the period July 2, 1983 through July 1, 1986. The Employer purchased Mrs. Smith's Pie Company and assumed the collective bargaining agreement which was extended through June 30, 1987.

[4] See Employer's Exhibit 3 to referee's hearings on June 18, 1986, July 9, 1986, and August 20, 1986 (referee's hearings).

the shop committee. At approximately 1:15 p.m., various employees began to leave the Employer's premises claiming they were ill and gathered across the street from the plant. Additional employees who were scheduled for the following shifts on Sunday and Monday began calling the Employer, claiming they were ill or could not come in to work for various reasons.

According to the assistant plant manager only thirteen of eighty-one regularly scheduled employees reported to work on Monday, April 21, 1986.[5] A Number of employees were observed gathered across the street from the plant on both Sunday and Monday. The assistant plant manager testified that the group carried signs indicating they were on strike.[6]

The Union disclaimed any responsibility for calling a strike or walkout on April 20th or 21st in violation of the collective bargaining agreement. Various employees including Claimants were terminated for participating in the illegal strike. Claimants filed for benefits and the Office of Employment Security (OES) granted benefits to Claimants, DiVergigelis, Gallo, and Ward. Benefits were denied Claimants Ryan and Long. On June 18, 1986, a hearing was held before the referee concerning the termination of twelve employees other than Claimants. Pursuant to a stipulation between the parties, general background testimony elicited in that hearing would be incorporated into the record in subsequent claims of employees who were terminated for allegedly participating in the illegal strike.

A hearing before the referee on the appeals of Claimants DiVergigelis, Gallo, Ward and Ryan was held on July 9, 1986. Claimant Long's hearing was held on

---

[5] Notes of Testimony from June 18, 1986 referee's hearing (N.T.) at 53; Notes of Testimony from second portion of July 9, 1986 referee's hearing (N.T. II) at 1.

[6] N.T. II at 11.

August 20, 1986. After the hearings, the referee denied benefits to Claimants DiVergigelis, Ryan and Gallo and granted benefits to Claimants Ward and Long. Claimants DiVergigelis, Ryan and Gallo appealed the denial of benefits to the Board and the Employer appealed the referee's grant of benefits to Claimants Ward and Long. The Board found that all the Claimants had participated in the illegal strike and had therefore concluded they had engaged in willful misconduct.

On appeal to this Court, Claimants contend that their claims should have been analyzed under Section 402(d) of the Law[7] rather than Section 402(e) and that the Board improperly found that the Claimants were involved in the illegal strike despite compelling evidence to the contrary. Claimants Ward and Long contend that the Board erred by finding they had participated in the illegal strike when the referee found otherwise.

We note initially that our scope of review is limited to determining whether constitutional rights or the provisions of the Administrative Agency Law relating to practice and procedure[8] have been violated, an error of law has been committed, or whether essential findings of fact are supported by substantial evidence. *Kirkwood v. Unemployment Compensation Board of Review,* 106 Pa. Commonwealth Ct. 92, 525 A.2d 841 (1987).

Section 402(d) of the Law denies compensation to any employee for any week "[i]n which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . ." Section 402(e) of the Law provides that a claimant shall be ineligible for benefits for any

---

[7] 43 P.S. §802(d).

[8] Sections 501-508 of the. Administrative Agency Law, 2 Pa. C. S. §§501-508.

week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct. . . ."

In *Penflex, Inc. v. Bryson,* 506 Pa. 274, 485 A.2d 359 (1984), our Supreme Court specifically approved a line of decisions holding that employees who have violated the collective bargaining agreement by participating in an illegal work stoppage have engaged in willful misconduct and are thus ineligible to receive benefits if they are terminated. Therefore, the Board properly analyzed Claimants' appeals under Section 402(e) of the Law.

We next turn to Claimants' contention that the Board improperly found they participated in the illegal strike despite the referee's findings in the Ward and Long appeals and the Claimants' testimony to the contrary. A resolution of this question requires an examination of the evidence in the case of each Claimant.

Claimants DiVergigelis and Gallo reported to work on Sunday morning, April 20, 1986. At approximately 1:30 p.m., Claimant DiVergigelis informed her supervisor that she was suffering from a headache and cramps and was going home. At the same time Claimant Gallo complained of stomach cramps and diarrhea and left work also. The Employer's assistant plant manager testified he saw both Claimants join the group of striking workers across the street from the plant after leaving work. Claimant DiVergigelis maintained she sat on the Employer's steps for 1½ hours waiting for her husband to pick her up and Claimant Gallo testified her car had a flat tire and she waited across the street from the plant for her nephew to fix it. Both Claimants were scheduled to work the following day at 9:00 a.m. but both telephoned the Employer claiming they were ill.[9]

---

[9] Both Claimants submitted doctors' excuses for their absences before the referee, to which the Employer raised hearsay objections.

Claimant Ward had scheduled a personal day on Sunday, April 20, 1986. The assistant plant manager testified that he saw Claimant Ward seated in his car across the street from the plant with a group of striking employees between 9:00 p.m. and 10:00 p.m. on Sunday.[10] Claimant Ward denied being across the street at that time. Although scheduled to work the following day at 6:00 p.m., Claimant Ward telephoned the Employer saying he could not work as he was allegedly suffering from a hangover.

According to a daily attendance record,[11] Claimant Ryan was scheduled to work at 3:00 p.m. on Sunday, April 20, 1986. At 1:55 p.m., she telephoned the Employer claiming she would be absent that day due to personal problems. The Employer's vice president and the assistant production manager testified that they saw Claimant Ryan across the street with the group of striking workers at approximately 4:30 p.m. on Sunday. Further, the assistant production manager testified that Claimant Ryan was gathered with the group of striking workers for several hours.[12] Claimant Ryan failed to report to work as scheduled on Monday, April 21, 1986. Claimant did not testify before the referee and therefore made no attempt to explain her presence in the group of striking plant workers.

Claimant Long was scheduled to work at 3:00 p.m. on Sunday but called the Employer claiming she could not come in due to illness. Claimant reported off ill the following day as well. A physician's excuse for Claimant Long was submitted to which a hearsay objection was raised.

---

[10] N.T. II at 21.
[11] Employer's Exhibit 15 to referee's hearings.
[12] See Employer's Exhibit 10 to referee's hearings.

The assistant plant manager testified that he saw Claimant Long across the street with the striking employees for several hours on Sunday. Claimant admitted that she was with the gathering of employees for an hour on Sunday[13] during her scheduled shift. However, she claimed she had been suffering from bladder problems while at work the previous day and had stayed overnight at her cousin's home located near the plant. Claimant stated that she called off sick on Sunday and claimed she was going to her car to go home that afternoon when she stopped and spoke to her co-workers to "find out what was going on at the job."[14]

Claimants were terminated for participating in an illegal strike or walkout. The referee found that Claimants DiVergigelis, Ryan, and Gallo were not ill on April 20th and 21st but were capable of working if they wanted to. The referee then found they had participated in the illegal strike. However, the referee found that Claimants Ward and Long did not participate and granted them benefits. In reversing the referee's decisions with regard to Claimants Ward and Long, the Board found that these Claimants were not ill but had participated in the illegal strike.

Although the Board is the ultimate finder of fact in unemployment compensation proceedings, *Rodrigques v. Unemployment Compensation Board of Review*, 58 Pa. Commonwealth Ct. 362, 427 A.2d 1255 (1981); *Treon v. Unemployment Compensation Board of Review*, 499 Pa. 455, 453 A.2d 960 (1982); its power is not unlimited. In *Treon*, our Supreme Court held that where the referee's findings are based on uncontradicted evidence, the Board is not free to disregard those findings. However, in *Peak v. Unemployment Compensation*

---

[13] Notes of Testimony from August 20, 1986 referee's hearing at 76.

[14] *Id.*

*Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985), the Supreme Court went on to say that even in cases where the referee's decision is based on uncontradicted testimony, the Board may still reverse where it sets forth its reasons for reversal or where the reason is clear from the record. *See Office of Attorney General v. Unemployment Compensation Board of Review,* 111 Pa. Commonwealth Ct. 187, 533 A.2d 1087 (1987).

In this case there is conflicting testimony as to whether Claimants Long and Ward participated in the strike. It was within the province of the Board as the final arbiter of fact to disbelieve the explanations which Claimants Ward and Long gave for their absences.[15] All Claimants were seen on either April 20th, or 21st in the group of employees which were striking. Claimants DiVergigelis, Ryan; Gallo and Long were seen at a time when they were scheduled to work but were supposedly too ill to do so. Claimant Ward was seen in his car alongside of the group of striking workers on Sunday and reported off sick the following day. Therefore, the Board's findings that all the Claimants participated in the illegal strike are based on substantial evidence.

Accordingly, we will affirm the Board's order.

## ORDER

AND NOW, this 14th day of September, 1988, the orders of the Unemployment Compensation Board of Review in the above-captioned matters are affirmed.

---

[15] It is clear that in awarding Claimant Long benefits, the referee considered the doctor's excuse which was submitted by her counsel. This evidence was properly objected to as hearsay and therefore, could not be used to support a finding by the referee. *See, Walker v. Unemployment Compensation Board of Review,* 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976).