**SCOZIO ENTERPRISES,
INC., Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW, Respondent.
(Two Cases).**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1997.

Decided April 3, 1997.

---

David E. Brier, Philadelphia, for Petitioner.

Sarah C. Yerger, Assistant Counsel, for Respondent.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

SMITH, Judge.

In these consolidated cases Scozio Enterprises, Inc. (Employer) petitions for review of orders of the Unemployment Compensation Board of Review (Board) that affirmed decisions of a referee determining that Kimberly L. D'Amico, as representative claimant, and Rita M. Farrell (Claimants) were not ineligible for unemployment compensation benefits for specified weeks under Section 402(d) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(d).

### I.

Employer questions whether the Board's finding that it was reasonable for striking workers to believe that they were permanently replaced was supported by substantial evidence. In addition, Employer questions whether the Board erred in holding that Employer severed the employment relationship with the striking employees by hiring permanent replacements, when Employer repeatedly and unequivocally announced that positions were still available to all strikers.

The Board found that Claimants worked at Employer's Shop 'N Save under a contract between Employer and the United Food and Commercial Workers International Union, Local 23 (Union). When the contract expired, the parties agreed on January 26, 1995 to a day-to-day extension, subject to a right of either side to terminate on 72 hours' written notice. Employer issued a letter to all employees February 21, stating that Employer had been training replacement workers. In the event of a strike the replacement workers might become permanent, and those current workers whose jobs were permanently filled would have no right to return. The union initiated a work stoppage on February 23; Employer began hiring replacement workers in order to continue operations.

On March 15 Employer sent a letter stating that it intended to begin to hire permanent replacements and to convert temporary employees to permanent status. Employer sent a letter March 24 stating that there were still some positions available for those who wished to return to work, but Employer could not guarantee for how long, as more temporary replacement workers were made permanent. At the end of April, pursuant to a request from the Union, Employer provided a listing of 55 original employees who continued working after the work stoppage and 52 hired since then and indicated that all were permanent. Based on this list, it was reasonable for many of the striking workers to believe that they had been permanently replaced and no longer had employment to which to return after the work stoppage ended. On May 9 Employer sent another letter, stating that some positions were still open, but those could be filled shortly; Employer did not clarify which employees had been permanently replaced and which had not.

Claimants filed claims for unemployment compensation benefits on August 25, 1995. The Job Center denied benefits for the weeks ending February 25, March 4 and March 11 and granted benefits for the weeks ending March 18, March 25 and April 1. Following a hearing on Employer's appeal, the referee affirmed as to the first three weeks and reversed and denied benefits as to the latter three. On Claimants' appeal the Board noted that the analysis of eligibility for unemployment compensation focuses on the immediate cause for the unemployment and that proper cause must be established for each week for which benefits are claimed. The Board determined that Claimants had been permanently replaced in regard to the latter three weeks, and it granted benefits. The parties agree that only those three weeks are the subject of the present petition for review.[1]

## II.

In *Canonsburg General Hosp. v. Unemployment Compensation Board of Review,* 156 Pa.Cmwlth. 533, 628 A.2d 503 (1993), *aff'd per curiam,* 540 Pa. 531, 658 A.2d 790 (1995), this Court considered a situation where an employer informed striking employees that some of them had been permanently replaced. Applying the rationale of *Penflex, Inc. v. Bryson,* 506 Pa. 274, 485 A.2d 359 (1984), the Court concluded that where an employer hires permanent replacements, absent evidence in the record and pertinent findings that continued work remains available to the striking workers, the employment relationship is severed.

In cases where an employer hires permanent replacements, the permanently replaced or terminated employees no longer have a direct interest in the work stoppage for purposes of Section 402(d), relating to an employee's ineligibility for benefits in any week

in which the unemployment is due to a work stoppage because of a labor dispute, other than a lockout. Rather, the cases are properly analyzed under Section 402(e), 43 P.S. § 802(e), relating to unemployment due to willful misconduct connected with one's work.[2] *Canonsburg General Hosp.* The Court further held that where an employer chooses to replace only some employees, the burden is on the employer to demonstrate which employees it has replaced, because that information is solely within the employer's knowledge. If the employer fails to meet this burden, benefits are due to all striking employees.

In the present case, Employer first contends that the Board's Finding of Fact No. 25 was central but that it is not supported and in fact is contradicted by the evidence of record. That Finding refers to the list Employer provided the Union in late April, characterizing those hired after the strike as "permanent." The Board found that "[b]ased on this list, it was reasonable for many of the striking workers to believe that they had been permanently replaced and no longer had employment to return to after the work stoppage ended." Board's Decision, Finding of Fact No. 25. Employer notes that its March 15 letter to striking employees ended with the statement: "Remember—the best way to protect your job is to fill it now." N.T., Employer's Ex. 4. Employer then selectively quotes from the letter of March 24 as follows: " . . . we still have enough positions available for those who may want to return to work." Employer notes that the list was not created until the end of April and therefore could not affect perceptions before March 18.

As a separately stated argument, Employer emphasizes that it did not sever the employment relationship because continuing work remained available to the striking employees, citing *Canonsburg General Hosp.*

---

1. The scope of this Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence in the record and whether there were errors of law or constitutional violations. *Stanley Flagg and Co., Inc. v. Unemployment Compensation Board of Review,* 146 Pa.Cmwlth. 248, 605 A.2d 443, *appeal denied,* 532 Pa. 648, 614 A.2d 1144 (1992).

2. The Supreme Court has stated: "[W]here there is no existing bargaining agreement, the courts have held that a work stoppage by employees is not considered willful misconduct making the strikers ineligible for unemployment compensation benefits if terminated." *Penflex, Inc.,* 506 Pa. at 291, 485 A.2d at 367.

Employer also notes that in *Kaolin Mushroom Farms, Inc. v. Unemployment Compensation Board of Review*, 669 A.2d 438 (Pa.Cmwlth.1995), an initial employer letter stating that striking employees could return but that there were no guarantees for how long was deemed to be insufficient in itself to constitute evidence that the employer began permanently replacing striking workers as of its date. A second letter unequivocally stating that workers would be replaced by a specific date and that all would be replaced in the next few days was sufficient to establish that the employer had not met its burden of proving that continuing work remained available.

The Board argues that the determination was based upon the findings as a whole, not just Finding No. 25. Claimants as Intervenors note that Finding No. 25 is not mentioned in the Board's discussion, which focuses on the correspondence from and actions of Employer in March 1995. Although the Board concedes that the list that the Union received after the weeks at issue does not apply, it refers to the principle that the Court will not upset a decision of the Board when an inaccuracy has no effect on the application of the relevant legal principles and the ultimate resolution of the case. *Wetzel v. Unemployment Compensation Board of Review*, 29 Pa.Cmwlth. 195, 370 A.2d 415 (1977).

The Board quotes the letter of March 24 in full. The letter first states that the process of switching temporary replacements to permanent status has started and that those employees have been told that they will not lose their jobs if and when the striking employees say that they are ready to return. *That means that some of the employees now on strike would not be able to return to work, even if the strike ended tomorrow because there are more strikers than unfilled positions to come back to;* the replaced people will have to wait for future openings....

However, at least for the present we still have permanent jobs available for people who decide this strike doesn't make sense, *assuming that some people won't return until the Union gives them the green light.* ...

.... As we said, we still have enough positions available for those who may want to return to work, but we can't guarantee those jobs will be available in the future as more temporary replacements are made permanent.

Certified Record, Item 5 A. 11 (emphasis added).

The Court finds ample support in the record for the Board's finding that the striking employees had reason to believe that some had been permanently replaced and a corresponding basis for a lack of any finding that continuing work remained available to all of them or to specified individuals. When quoted fairly, the March 24 letter beyond any dispute states the opposite of the representation of it made by Employer here, that is, it states that some striking employees have been permanently replaced already and cannot return to work.[3] Because it was Employer's letter of March 24 that first conveyed this information, however, the Court notes that there is a lack of a basis for the Board's implicit determination that the striking employees had reason to believe during the week ending March 18 that some of them had been permanently replaced.

Employer's argument that the evidence does not support a finding of fact concerning the beliefs of individual striking employees as to their status is misdirected. Although *Reading Nursing Center v. Unemployment Comp. Bd. of Review*, 663 A.2d 270 (Pa. Cmwlth.1995), *appeal denied*, 544 Pa. 618, 674 A.2d 1078 (1996), focused on the need for claimants to prove a reasonable belief that some or all of them had been permanently replaced, the basic inquiry there, as in *Kaolin Mushroom Farms, Inc.* and *Canonsburg General Hosp.*, was directed toward the objectively reasonable effect of the employer's statements and conduct, not proof of the subjective beliefs of individual employees.

**3.** Counsel is reminded of the requirement under Rule 3.3(a)(1) of the Rules of Professional Conduct that a lawyer shall not knowingly make a false statement of material fact or law to a tribunal. This applies equally to counsel admitted *pro hac vice.*

Once it is established that an employer has communicated that some striking employees have been permanently replaced (even where this is done indirectly, *see Reading Nursing Center*) and that the employer has not identified which individuals those are, then *Canonsburg General Hosp.* requires as a matter of law that the strikers be regarded as having been terminated, and benefits are due to them all.[4] Accordingly, the Court affirms the order of the Board to the extent that it approved unemployment compensation benefits for the weeks ending March 25 and April 1, 1995. The Board's order is reversed as to the grant of benefits for the week ending March 18, 1995.

*ORDER*

AND NOW, this 3rd day of April, 1997, the order of the Unemployment Compensation Board of Review is reversed to the extent that it awarded unemployment compensation benefits for the week ending March 18, 1995; the order is affirmed in all other respects.

4. Equally unfounded is Employer's contention that its repeated statements that work remained available to some striking employees created a duty on the part of each one to inquire whether his or her job had yet been filled. This position is flatly contrary to the holding of *Canonsburg* *General Hosp.*, which in plain language places the burden on an employer to communicate this information.