570 A.2d 96

**ACME CORRUGATED BOX COMPANY, INC., Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 8, 1989.

Decided Sept. 8, 1989.

Reargument Granted Nov. 21, 1989.

246

Louis J. Capozzi, Jr., Fox, Rothschild, O'Brien & Frankel, Philadelphia, for petitioner.

No appearance for respondent.

Margaret A. Browning, Spear, Wilderman, Sigmond, Borish & Endy, Philadelphia, for intervenors, George Horvath, et al.

Before DOYLE and PALLADINO, JJ., and NARICK, Senior Judge.

PALLADINO, Judge.

Acme Corrugated Box Company (Acme) appeals an order of the Unemployment Compensation Board of Review affirming a referee's decision granting benefits to George Horvath (Claimant).

Claimant worked for Acme as a press operator and was a member of the United Paper Workers Union, Local No. 375 (Union). In January 1985, Acme and the Union were engaged in labor negotiations to replace an existing contract which was to expire on January 31, 1985. The contract expired on January 31, 1985, but the employees continued to work until February 5, 1985. On February 6, 1985, the Union began to picket.

Acme contends that the Union went out on strike and therefore, Claimant is not entitled to unemployment compensation benefits. Claimant asserts that the work stoppage was either the result of a lockout or that Acme's

subsequent conduct converted the strike into a lockout. Therefore, the sole issue on appeal [1] is whether Claimant's unemployment was the result of a lockout or a strike. We note that this issue is a mixed question of law and fact subject to our review. *Grandinetti v. Unemployment Compensation Board of Review,* 87 Pa.Commonwealth Ct. 133, 486 A.2d 1040 (1985).

■ Under Section 402(d) of the Unemployment Compensation Law,[2] an employee is ineligible for unemployment benefits for any week in which the cause of his unemployment is due to a labor dispute other than a lockout. The test to determine if the work stoppage is caused by a strike or a lockout was set forth in *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 444–45, 163 A.2d 91, 93–94 (1960):

Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the preexisting terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a "lockout" and the disqualification for unemployment compensation benefits in the case of a "stoppage of work because of a labor dispute" does not apply.

■ This test was further explained in *Philco Corp. v. Unemployment Compensation Board of Review,* 430 Pa. 101, 103, 242 A.2d 454, 455 (1968): "[L]ogically the test of whether a work stoppage resulted from a strike or a

---

1. Our scope of review is limited to a determination of whether errors of law have been committed, constitutional rights were violated or findings of fact are supported by substantial evidence. *AVCO Corp. v. Unemployment Compensation Board of Review,* 105 Pa.Commonwealth Ct. 316, 524 A.2d 531 (1987).

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(d).

lockout requires us to determine which side, union or management, first refused to continue operations under the status quo after the contract had technically expired but while negotiations were continuing." Claimant has the burden of proving that the work stoppage was caused by a lockout and not a strike. *AVCO Corp. v. Unemployment Compensation Board of Review*, 105 Pa.Commonwealth Ct. 316, 524 A.2d 531 (1987).

Claimant relies on the following findings of the Board in its argument that Acme first refused to continue on the status quo:

4. As the contract expiration date approached, the Union verbally offered on several occasions to continue working under the terms of the old contract after its expiration, in the event a new contract was not achieved.

5. These offers by the Union to extend the expiring agreement and to work thereunder were rejected by the employer.

6. The contract expired on January 31, 1985 and the Union membership voted to reject the employer's final offer, which included the modifications.

7. The Union, nevertheless, continued to work without a contract for the period February 1, 1985 through February 5, 1985.

8. During this period, the employer implemented its last offer and pursuant to that action made no contributions to the Union health and welfare plan or to the Union pension plan.

■ Although Acme, prior to the expiration of the contract, had refused the Union's offers to operate under the status quo, it did continue to make work available after the expiration of the contract. The fact that an employer rejects union offers to continue to operate under the status quo does not automatically indicate that work is not available under the terms of the prior contract after its expiration. *See Batkowski v. Unemployment Compensation Board of Review*, 89 Pa.Commonwealth Ct. 51, 491 A.2d 953 (1985). "[I]n determining the workers' right to unemploy-

ment benefits, entitlement must turn on the actual conduct of the respective sides and not upon the rhetoric of negotiations." *Borello v. Unemployment Compensation Board of Review*, 490 Pa. 607, 614, 417 A.2d 205, 209 (1980). Consequently, we must look at Acme's conduct subsequent to the expiration of the contract to determine if it continued to make work available under the status quo.

■ Initially we note that Acme's final offer, which is contained in the record in Claimant's Exhibit No. 5, contains provisions for contributions to the Union health and welfare plan and the Union pension plan. Therefore, the failure to make payments to these plans is not evidence that Acme implemented its final offer. Furthermore, there is no support in the record that Acme either implemented terms of its final offer or altered the conditions of employment prior to the work stoppage. We conclude that the Board's finding of fact No. 8, that Acme implemented its final offer, is not supported by substantial evidence.

■ Claimant contends that Acme's failure to make payments to the Union health and welfare plan, and Union pension plan for the period from February 1 to February 5, 1985 as required by the expired contract, suggests that Acme did not operate under the status quo after the expiration of the contract. As a result of this, Claimant contends that Acme was the first to refuse to maintain the status quo and the work stoppage was therefore a lockout. Under the terms of the expired contract, Acme was required to make payments to the pension, and health and welfare plans between the fifteenth and the twentieth day of the month after they had accumulated. Therefore, these payments were due to be paid to the plans between March 15 and March 20, 1985. There is no indication in the record that, prior to the work stoppage, Acme had not intended to make the contributions when they were due. Under these circumstances, Acme's failure to contribute to these plans, over a month after the initial work stoppage, has no bearing on whether the work stoppage was initially a strike or a

lockout. Therefore, we conclude that the initial work stoppage was the result of a strike and not a lockout.

However, our analysis does not stop here. We must consider the cause of the unemployment on a week by week basis. *High v. Unemployment Compensation Board of Review*, 505 Pa. 379, 479 A.2d 967 (1984). Claimant contends that even if the initial labor stoppage was the result of a strike, it was transformed into a lockout when Employer hired replacement employees on terms which were different from those under the prior labor agreement. Shortly after the picketing began, Acme began hiring permanent replacement employees. Several of the Union members crossed the picket line and returned to work. These employees, as well as the replacement employees, worked under terms and conditions of employment which were different from those under the expired labor agreement. However, it was not until March 27, 1985, that the Union indicated a willingness to return to work under the terms of the expired agreement. As a result, the work stoppage at least until that time was the result of a strike.

Claimant contends further that Acme's failure to permit the Union members to return to work after the Union's offer to return to work transformed the strike into a lockout. We disagree. Acme refused this offer because all of its positions were filled. An employer does not transform a strike into a lockout where union member's jobs are no longer available because they have been filled by permanent replacements. *Schreiber v. Unemployment Compensation Board of Review*, 187 Pa.Superior Ct. 135, 144 A.2d 448 (1958).

We conclude that Claimant's unemployment was the result of a strike rather than a lockout. Accordingly, the order of the Board is reversed.

## ORDER

AND NOW, September 8, 1989, the order of the Unemployment Compensation Board of Review is reversed.