615 A.2d 883

**T.B. WOOD'S SONS COMPANY, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 15, 1992.

Decided Aug. 26, 1992.

Petition for Allowance of Appeal
Denied May 3, 1993.

Scott F. Zimmerman, for petitioner.

Maribeth. Wilt–Seibert, Asst. Counsel, for respondent.

William T. Josem, for intervenor Walter Klenzing, Sr.

Before PALLADINO, and FRIEDMAN, JJ., and NARICK, Senior Judge.

PALLADINO, Judge.

T.B. Wood's Sons Company (Employer) appeals·a decision of the Unemployment Compensation Board of Review (Board) granting unemployment compensation benefits to Walter Klenzing (Claimant). We reverse.

Claimant was employed at Employer's Chambersburg plant and is a representative claimant for members of the United Auto Workers, Local 695 (Union), which is the collective bargaining agent for 322 of Employer's employees. The Union and Employer had a collective bargaining agreement which expired on April 30, 1990. On April 30, 1990, the Union engaged in a work stoppage. Claimant subsequently filed an application for unemployment compensation benefits. On the basis of subsection 402(d) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 802(d),[1] the Bureau of Unem-

1. That subsection states:

ployment Compensation Benefits and Allowances (Bureau) denied Claimant's application through and including the week ending June 9, 1990, on the ground that continuing work was available and the Claimant was engaged in a labor dispute other than a lock-out.

The Bureau issued a subsequent decision which granted Claimant benefits for the week ending June 16, 1990 and the weeks thereafter because Employer hired workers to permanently replace the Union employees, therefore purportedly severing the employment relationship and rendering subsection 402(d) inapplicable.

Employer appealed the latter decision to a referee, who denied benefits for the week ending June 16, 1990 on the ground that Claimant remained on strike. Claimant appealed and the Board, without taking additional evidence, reversed the referee and granted benefits.

Employer appeals [2] and presents two issues: (1) whether substantial evidence supports certain findings of the Board which state that, as of June 16, 1990, Employer had hired replacement workers and subcontracted out 40–60% of the work performed at the plant; and (2) whether striking employees who have not offered to return to work become entitled to unemployment compensation benefits after an employer has begun to hire replacement workers.

In pertinent part, the Board found the following facts:
9. On or about June 5 to June 7, 1990, the employer began to hire permanent replacement workers to replace the Union employees engaged in the work stoppage.
10. The employer hired 193 replacement workers.

An employe shall be ineligible for compensation for any week—

. . . . .

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out)....

**2.** Our scope of review in an appeal from a decision of the Board is limited to determining whether constitutional rights were violated, an error of law was committed, or findings of fact are supported by substantial evidence. *Hercules, Inc. v. Unemployment Compensation Board of Review*, 146 Pa.Commonwealth Ct. 77, 604 A.2d 1159 (1992).

11. Further the employer permanently contracted out 40 to 60 percent of the work previously performed at the work site.

12. The employer informed the Union that if the Union employees decided to return to work the Union employees would not replace the replacement workers.

13. Further the employer informed the Union that it was permanently subcontracting the work out because the sub-contractor could do the work cheaper.

14. By contracting the work out, the employer no longer made work available to the remaining 129 employees.

15. As of week [sic] ending June 16, 1990, work was no longer available to the Union employees because they had been replaced and because the work was subcontracted out.

16. The Union employees were effectively discharged as of week [sic] ending June 16, 1990 because work was no longer available.

17. The claimant's eligibility for unemployment compensation benefits for the weeks following the week of June 16, 1990, is not at issue.

Board Decision of October 28, 1991, at 1–2. The Board further stated that "it has limited its decision to the week at issue. Therefore, the Board has made no findings and will draw no conclusions with respect to the weeks following the week ending June 16, 1990." *Id.* at 2. The Board held that Claimant was entitled to benefits because Employer severed the employment relationship upon hiring permanent replacement workers and permanently subcontracting out work.

Employer argues that findings of fact 10 through 12 and 14 through 16 are not supported by substantial evidence because there is no evidence of record to indicate that the hiring of 193 replacement workers (finding of fact 10), the contracting out of work (finding of fact 11), or Employer's informing the Union of its position on non-replacement of replacement workers (finding of fact 12) had taken place as of the week at issue, i.e.,

the week ending June 16, 1990.[3]

The Board cites no evidence of record to indicate that the events in the challenged findings (i.e., the hiring of replacement workers, the subcontracting out of work, and Employer's informing the Union of its position on non-replacement of replacement workers) had occurred as of the week ending June 16, 1990.

Claimant does cite his own testimony that the events described in the challenged findings occurred, but that testimony does not indicate on what date the events occurred. Claimant nevertheless creatively argues that because the referee indicated at the outset of the hearing that the period involved was the week ending June 16, 1990, all of his testimony, including that on which the challenged findings are based, necessarily pertained to that time period. Further complicating the substantial evidence issue is the unchallenged finding of fact 9, a finding supportable at least on the basis of the statement on page 3 of Employer's brief to the referee that "On or about June 7, [1990,] the Company began to recruit and hire replacement employees.... " However, Employer backpaddles in its brief to this court by stating that "*there is not one shred of evidence in the record that the Company had hired even one replacement employee, let alone 193, by June 16.*" Employer's Brief, at 13 (emphasis in original).

 Faced with these arguments and an ambiguous record, the question of whether substantial evidence supports the determination that the events in the challenged findings had

3. We note that Employer's challenges to findings of fact 14 through 16 involve the same inquiry as its challenges to findings of fact 10 and 11, i.e., is there evidence of record to support the findings that the replacement of workers and subcontracting out of work had occurred as of the week ending June 16, 1990?

Notably, the *date* of the occurrence of these events is all that is controverted. Employer concedes that it "did hire 193 replacement workers (Finding No. 10) and did inform the Union that, if its members decided to return to work, they would not supplant replacement workers (Finding No. 12)." Reply Brief of Employer, at 2. Employer argues, however, that "the uncontradicted evidence indicates that these two events occurred in October and July, respectively, and not in June as found by the UCBR. (R. 28a, 55a, 60a)" *Id.*

occurred as of the week ending June 16, 1990 is not easily answered.[4] However, in the circumstances of this case, we need not resolve this issue. Even accepting the findings of fact of the Board as supported by substantial evidence, Claimant is still not entitled to benefits for the week ending June 16, 1990.

This court recently addressed the issue of entitlement to unemployment compensation benefits following the hiring of permanent replacement workers in *Acme Corrugated Box Company v. Unemployment Compensation Board of Review,* 131 Pa.Commonwealth Ct. 244, 570 A.2d 96 (1989) (*Acme I* ), and *Acme Corrugated Box Company v. Unemployment Compensation Board of Review,* 131 Pa.Commonwealth Ct. 251, 570 A.2d 100 (1990) (en banc) (*Acme II* ). The facts of *Acme I* and *Acme II* are the same. Therein a labor contract expired on January 31, 1985, and the Union picketed on February 6, 1985. After concluding that the initial work stoppage was the result of a strike and not a lock-out, we addressed the employer's hiring of permanent replacement employees shortly after the picketing began. We indicated in *Acme I* that because the Union did not indicate a willingness to return to work under the terms of the expired agreement until at the earliest March 27, 1985, the work stoppage remained the result of a strike at least until that time, the hiring of permanent replacement workers notwithstanding.

We elaborated on this holding in *Acme II,* wherein we held that:

a striking employee may not be denied unemployment compensation benefits under Section 402(d) *after he has made an unconditional offer to return to work under the terms of an expired contract,* where an employer chooses to keep a

---

4. A claimant has the burden of proving entitlement to unemployment compensation benefits. *Hughes v. Unemployment Compensation Board of Review,* 51 Pa.Commonwealth Ct. 448, 414 A.2d 757 (1980). Moreover, in strike/lock-out cases, the date the various events occurred are critical in determining entitlement to benefits. *See High v. Unemployment Compensation Board of Review,* 505 Pa. 379, 479 A.2d 967 (1984) (eligibility for unemployment compensation determined on a week-to-week basis).

replacement employee rather than permit a striking employee to return to work.

*Id.* at 254, 570 A.2d at 101 (emphasis added).

In this case, however, Claimant has not satisfied the requirements of *Acme II* because the Board made no finding that Claimant (or the Union) at any time made an unconditional offer to return to work, much less made such an offer as of the week ending June 16, 1990. Moreover, our own review of the record reveals no evidence to support a finding that such an offer was made as of the week ending June 16, 1990. Nor does Claimant argue that such an offer was made.[5]

Indeed, the only determination ever made on the issue of whether the Union made an offer to return to work was made by the referee, who considered a July 20, 1990 letter from the Union to Employer but determined that the letter constituted only a conditional, not an unconditional, offer to return to work. *See* Referee's Decision of April 24, 1991, at 3.[6] Of course, an offer to return to work made on July 20, 1990 has no relevance to the status of the parties as of the week ending June 16, 1990, the sole week considered in the Board decision presently before us.

Because no finding exists that the Union or Claimant, as of the week ending June 16, 1990, made an unconditional offer to return to work, the requirements of *Acme II* have not been satisfied. The Board therefore erred by concluding that Employer's hiring of replacement workers and subcontracting of work,[7] of their own force, severed the employment relationship and rendered Claimant entitled to unemployment compensation benefits.

5. In actuality, Claimant in his brief indirectly concedes that no such offer was made by arguing (incorrectly) that making such an offer is not essential to invoking the rule articulated in *Acme II*. *See* Claimant's brief, at 17–18.

6. We express no opinion on whether the Union's July 20, 1990 letter does constitute only a conditional offer to return to work.

7. Claimant does not argue that the rationale of *Acme II* (where replacement workers were hired) is inapplicable where an employer, in addition to hiring replacement workers, subcontracts out work. Nor do we perceive that such a factual difference is material to the applicability of the rule of *Acme II*.

■ The Claimant argues that it would have been futile for the Union to make an unconditional offer to return to work after "The employer informed the Union that if the Union employees decided to return to work the Union employees would not replace the replacement workers." Finding of fact 12.

We disagree. The futility doctrine may be invoked only "if it appears that . . . an offer would definitely not be accepted by management." *Philco Corporation v. Unemployment Compensation Board of Review*, 430 Pa. 101, 104, 242 A.2d 454, 456 (1968). In this case, however, the work stoppage originated with a strike by the Union. Additionally, the referee found on the basis of uncontroverted evidence that Employer offered each Union member the chance to return to work under the terms of the expired work agreement (referee's finding of fact 14; R. 38a, 39a) and that some union members did in fact return to work (referee's finding of fact 16; R. 26a). Because the Board may not disregard the findings of the referee which are based on uncontroverted evidence, *Office of Attorney General v. Unemployment Compensation Board of Review*, 111 Pa. Commonwealth Ct. 187, 533 A.2d 1087 (1987), these findings of the referee establish at least that Employer might have been receptive to an unconditional offer by the Union to return to work, and that such an offer was not one which "would definitely not be accepted by management." *Philco.*

Moreover, to permit invocation of the futility doctrine under the present facts would be to eviscerate the central requirement in unemployment compensation cases that parties offer to maintain the status quo. *Philco.* This requirement functions to permit referees, the Board and this court to more easily determine which party is responsible for a work stoppage. We are therefore reluctant to abandon this requirement, especially in cases such as the present one where the making of an unconditional offer to return to work might have clearly established the party responsible for continuing the work stoppage.

Accordingly, we hold under the circumstances of this case that the futility doctrine is inapplicable.

To satisfy the strictures of *Acme II*, the Union was obligated to make an unconditional offer to return to work. This it did not do. The requirements of *Acme II* not having been met (at least for the time period considered by the Board (i.e., for the week ending June 16, 1990)), the decision of the Board is reversed.

FRIEDMAN, J., dissents.

## ORDER

AND NOW, August 26, 1992, the order of the Unemployment Compensation Board of Review in the above-captioned matter pertaining to the application for benefits for the week ending June 16, 1990, is reversed.

NARICK, Senior Judge, concurring.

I join in the opinion of the majority except in its failure to find that the Board's decision is not supported by substantial evidence that the 322 unit employees represented by the Union/Claimant were effectively discharged as of the week ending June 16, 1990, because they had been either replaced or that the work as of that week was contracted out. The Board acknowledges that Claimant ceased work as a result of a work stoppage. However, it accepted the testimony of the Claimant that as of the week ending June 16, 1990 work was no longer available since the Claimants were replaced or work was contracted out.

For the reasons set forth below, the Board's findings are contrary to the credible and competent testimony and the record taken as a whole and therefore cannot be upheld. The record clearly established as found by the referee that the work stoppage at its inception on April 30, 1990, was a strike and continued to be a strike as relevant herein at least through June 16, 1990. It should be noted that following the expiration of the contract and the start of the work stoppage, no changes were made in the contract or invoked by the

Employer, and thus, the status quo was maintained during the appeal period. As recently emphasized in *Local 730, United Association of Journeymen and Apprentices of the Plumbing and Pipe–Fitting Industry v. Unemployment Compensation Board of Review*, 505 Pa. 480, 480 A.2d 1000 (1984), the sole test for determining whether a work stoppage is a lockout or a strike for purposes of entitlement of unemployment compensation benefits is which side, union or management, first refused to continue operations under the status quo. The status quo continued here and was not transferred into a lockout when the Employer began hiring replacement employees. *See Acme Corrugated Box Co. v. Unemployment Compensation Board of Review*, 131 Pa.Commonwealth Ct. 244, 570 A.2d 96 (1989).

I note, as did the Board, that the Claimant appealed the referee's denial of benefits for only "*the week ending June 16, 1990.*" (Emphasis added.) The Board specifically stated " . . . the Board has made no findings and will draw no conclusions with regard to the week following the week ending June 16, 1990."

We start with the well-settled law as stated by our Supreme Court in *Treon v. Unemployment Compensation Board of Review*, 499 Pa. 455, 460, 453 A.2d 960, 962 (1982):

> Although the weight to be given the evidence and the credibility to be afforded the witnesses are within the province of the Board as finder of fact, . . . such a body is not free to ignore the overwhelming evidence in favor of a contrary result not supported by the evidence.

(*citing Borello v. Unemployment Compensation Board of Review*, 490 Pa. 607, 618–19, 417 A.2d 205, 211 (1980) (emphasis deleted)). Similarly, we are of the opinion that the Board may not ignore the referee's findings when they are supported by overwhelming evidence. To the same effect, our Court stated in *Hercules v. Unemployment Compensation Board of Review*, 146 Pa.Commonwealth Ct. 77, 85, 604 A.2d 1159, 1162–1163 (1992):

> Where there exists overwhelming uncontroverted evidence upon which the referee relies to make findings, and

where the Board takes no additional evidence, *the Board may not disregard (or make findings contrary to) such findings of the referee unless it provides reasons for doing so,* Treon, or those reasons are clear from the record. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985); *see also Office of Attorney General v. Unemployment Compensation Board of Review,* 111 Pa.Commonwealth Ct. 187, 533 A.2d 1087 (1987). (Emphasis added.)

We are presented with findings made by the referee which the Board failed to adopt. The Board heard no additional testimony before it rendered its decision. It had before it precisely the same record which was before the referee and now before us. Based on that record, the referee concluded that during the period from April 30, 1990 to June 16, 1990 the Union employees were and remained as striking employees. Further, the fact that some permanent replacements may have been hired before June 16, 1990, the referee found that the cause of the unemployment was the strike which had not been converted into a lockout during the relevant period.

The Board adopted the referee's Findings of Fact 2, 3, 4 and 5 that the Claimant was a representative of the employees represented by the Union; that the collective bargaining agreement between the Union and the Employer had an expiration date of April 30, 1990; the negotiations for a new collective bargaining agreement were not successful before the expiration date, thus resulting in a work stoppage on April 30, 1990; and that on or about June 5 to June 7 that the Employer began to hire permanent replacement employees and contracted out some of the unit work. However, the Board did not adopt or address the referee's Finding of Fact No. 6 that the work stoppage at its inception was a "strike" and that the employees withheld services while work was available under the same terms and conditions of the expired collective bargaining agreement.

Also, the Board did not adopt the referee's Findings Nos. 11, 12, 14, 15 and 16 in substance as follows: that the Union on July 20, 1990, communicated with the Employer for the first

time since the April 30 work stoppage that unit employees were prepared to return to work under the same terms of the expired agreement and that bargaining continue in good faith; that the Employer responded on July 24, 1990 that some permanent replacements had been hired but the jobs were available for some of the striking employees; that the Claimant did not accept the Employer's offer and did not return to work on or as of August 31, 1990, on the same terms under the existing contract; that as of October 10, 1990, 193 replacements of the unit work force of 322 prior to the work stoppage were hired and that a number of members of the Claimant's unit employees did return to work during the work stoppage under the same terms and conditions of the expired contract.

The Board in its Finding No. 9 found that the Employer on or about June 5 to June 7, 1990 began to hire permanent replacements to replace the employees that engaged in the work stoppage on April 30, 1990. However, in its Findings No. 9, 15 and 16, it leaped incredibly to the conclusion that the Employer hired 193 replacements and thereby effectively discharged the 322 unit employees as of the week of June 16, 1991 because work was no longer available since they were replaced or the work was contracted out. These incredible findings fly in the face of the findings of the referee that the Employer hired 193 replacements out of a work force of 322 as of October 19, 1990. Significantly, the Claimant acknowledged in its post-hearing brief to the referee submitted three days after the hearing of October 10, 1990 that the Employer had begun to hire replacements on June 7, 1990 and "the company at the present time employs approximately 170 such employees who have permanently replaced the Claimants." Further, in the Union's brief after stating Claimant made an offer to return to work on July 20, 1990, the Employer advised the Union on July 24 that it hired 150 permanent replacement and that there was work available for if not all a number of the striking employees.

There is not a scintilla of competent evidence either in the record or the parties' briefs that "the Union employees were effectively discharged as of the week ending June 16, 1990

because work was no longer available." Based thereon the Board asserted "once work was no longer available to the Claimant, the Board concludes that the immediate cause for his unemployment was the lack of work."

As stated by the court in *Treon*, "if particular findings are inconsistent, incredible or unsupported by the evidence, then the Board must so indicate. The Board may not, however, simply disregard findings made by the referee which are based upon consistent and uncontradicted testimony without stating its reasons for doing so." *Id.* at 461, 453 A.2d at 962. In the case before us, the Board, although disregarding the credible findings of the referee, did not provide any reasons for doing so, as *Treon* requires, nor is its reasons clear from the record. *Peak.*

Accordingly, I would find that the Board was in error in failing to affirm the referee's Findings of Fact and conclusion that the Claimant and the unit employees remained striking employees during the appeal period, April 30 to June 16, 1990, and that the strike was not converted to a lockout when the Employer began hiring replacements shortly before June 16, 1990.