621 A.2d 1130

BRUCE PLASTICS, INC., Petitioner,

v.

UNEMPLOYMENT COMPENSATION BOARD
OF REVIEW, Respondent. (Two Cases)

Commonwealth Court of Pennsylvania.

Argued Oct. 22, 1992.

Decided Feb. 10, 1993.

Ronald J. Andrykovitch, for petitioner.

Maribeth Wilt–Seibert, Asst. Counsel, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The question before this Court is whether the conditional offer to return to work by Patricia R. Auten and Laverne T. Pivirotto (representative Claimants), allows them to receive unemployment compensation benefits.

On February 9, 1990, BPI Acquisition Corp. (BPI) purchased the assets of Bruce Plastics, Inc. (Bruce). Bruce had been unionized for decades and at the time of the acquisition the United Electrical, Radio and Machine Workers of America (Union) was the certified representative of the Bruce employees. BPI offered employment to all of Bruce's employees and extended recognition to the Union as the employees' bargaining representative. However, before hiring Bruce's employees, BPI advised each applicant that it would continue the same wages, benefits and other economic conditions as Bruce had, but that certain employment policies would be different than those of Bruce. BPI and the Union entered into a recognition agreement, whereby BPI would be allowed to set reasonable work rules, policies and regulations, governing the

employees' employment. Shortly after BPI commenced operations, BPI and the Union began negotiations over wages, hours and other terms and conditions of employment, to be embodied in a collective bargaining agreement (CBA). Little progress was made at the initial meeting.

The employees, apparently discontent with the lack of progress in negotiating the CBA, walked out on March 22, 1990. The walk-out was not authorized or instigated by the Union. Neither the Union nor the employees gave BPI notice of their intention to strike. The following day, forty-five of the fifty-one employees established a picket line and refused to return to work. The employees who continued working received the same wages, hours and other terms and conditions of employment as before the strike, i.e. the status quo was maintained.

At the April 4, 1990 negotiating session, the Union stated that the employees, including representative Claimants, would return to work under four conditions: 1) BPI must rescind its employee handbook; 2) frequent negotiating must occur; 3) BPI must implement a health plan; and 4) all employees who walked off the job be returned to work. BPI refused the offer and also advised the Union that it had hired permanent replacement employees. Striking employees made no further offer to return to work until June 27, 1990, when the parties entered into a written strike settlement agreement, providing for the return to work of its striking employees, effective July 10, 1990.[1]

The representative Claimants had filed for unemployment compensation benefits on March 28, 1990, on the basis that they had become unemployed because of the March 22, 1990 work stoppage. The Office of Employment Security denied benefits. Representative Claimants appealed and after a consolidated hearing the referee allowed benefits for weeks ending March 24, 1990 to July 7, 1990. BPI appealed and the Unemployment Compensation Board of Review (UCBR) modified the referee's decision, denying benefits for weeks ending

---

1. Approximately twelve of the striking employees chose not to return to work. Some of the replacement employees were laid off so that the striking employees could return to their jobs.

March 24 through April 7, 1990 but granting benefits for weeks ending April 14, 1990 through July 7, 1990.

■ On appeal to this Court,[2] Bruce argues that the UCBR erred as a matter of law in holding that the representative Claimants were eligible for benefits because representative Claimants' offer to return to work on April 4, 1990 was conditional. We agree.

Section 402(d) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(d), provides, in pertinent part:

> An employe shall be ineligible for compensation for any week—
>
>      *      *      *      *      *      *
>
> (d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.

In *Acme Corrugated Box Co. v. Unemployment Compensation Board of Review*, 131 Pa.Commonwealth Ct. 251, 570 A.2d 100 (1990) (*Acme II* ), we held that striking employees who are permanently replaced during a strike are ineligible for unemployment compensation benefits under Section 402(d) of the Law, until they make an *unconditional* offer to return to

---

2. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

work. In *Acme II*, the work stoppage began on February 6, 1985, after the parties were unable to reach accord on a new CBA. Shortly thereafter, Acme began hiring permanent replacement workers. Employees made an unconditional offer to return to work on March 27, 1985. Acme refused this offer because it had hired permanent replacements.

■ The Union here, does not contend that it made an unconditional offer to return to work but that, in fact, it is not bound by the holding of *Acme II* because the representative Claimants' employment had been severed by BPI's hiring of replacement employees. In *Acme II*, we held that where an employer chooses to keep a replacement employee rather than permit a striking employee to return to work, the striking employee cannot be denied unemployment compensation, if the striking employee has made an unconditional offer to return to work. Here, there is no evidence that BPI would keep replacement employees if an unconditional offer was made. In fact, when the employees made the unconditional offer on July 27, 1990, BPI began laying off the replacement workers.

■ In *T.B. Woods' Sons Co. v. Unemployment Compensation Board of Review*, 150 Pa.Commonwealth Ct. 217, 615 A.2d 883 (1992), we elaborated on the holding of *Acme II* and stressed that a return to work offer by the employees must be unconditional. If the offer is not unconditional, "the requirements of *Acme II* have not been met. . . ." 150 Pa.Commonwealth Ct. at 223, 615 A.2d at 887. Because the representative Claimants' offer to return to work required BPI to agree to four conditions, different than what existed at the time it took over Bruce, i.e., the status quo, the requirement of an unconditional offer as described in *Acme II* was not met.

Accordingly, we reverse.

## ORDER

AND NOW, this 10th day of February, 1993, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby reversed.

FRIEDMAN, Judge, concurring.

I concur in the result. However, in my view, the majority's analysis fails to identify precisely the operative facts and law upon which the resolution of this case should turn.[1]

Employees who are out of work due to a work stoppage are entitled to unemployment benefits only if the work stoppage is due to a lockout.[2] *Philco Corp. v. Unemployment Compensation Board of Review*, 430 Pa. 101, 104, 242 A.2d 454, 455 (1968). The initial question in determining whether a work stoppage is a strike, attributable to the employees, or a lockout, attributable to the employer, is which party first breached the status quo. Here that party was clearly the employees. The next inquiry where the work stoppage, as here, takes the form of a strike, is whether the employees have made an initial peace move by offering to return to work on the preexisting terms. Where no such offer was made, the futility doctrine may be invoked if it appears that such an offer would definitely not have been accepted by the management. *Philco.* Because the proper inquiry in determining the cause of unemployment must be confined to the immediate cause of unemployment, *Acme Corrugated Box Company, Inc. v. Unemployment Compensation Board of Review*, 131 Pa.Commonwealth Ct. 251, 570 A.2d 100 (1990) (en banc) (*Acme II*), the critical question in this case where the employees initiated the work stoppage is whether any later action by either party changed the immediate cause of unemployment so as to make invocation of the futility doctrine proper.

1. The question of whether a work stoppage is a strike or a lockout is a mixed question of fact and law. *Philco Corp. v. Unemployment Compensation Board of Review*, 430 Pa. 101, 242 A.2d 454 (1968).

2. This case differs factually from many of the cases cited because due to the change of employers there was no expiration of an existing bargaining agreement. Rather, the employees were negotiating a new bargaining agreement. This distinction does not change our analysis because employees who are bargaining for a new contract are not guilty of willful misconduct when they strike and are therefore eligible for unemployment benefits if the employment relationship is later severed by the employer, *Penflex, Inc. v. Bryson*, 506 Pa. 274, 485 A.2d 359 (1984), or if the work stoppage is converted to a lockout. *See also* paragraph 6 of the Recognition Agreement between BPI and the United Electrical, Radio & Machine Workers of America (R.R. at 149a).

Our courts have been loathe to apply the futility doctrine unless it is clear that the employer would not accept an unconditional offer to return to work. *Philco; Acme II; T.B. Woods Sons Company v. Unemployment Compensation Board of Review*, 150 Pa.Commonwealth Ct. 217, 615 A.2d 883 (1992). The futility doctrine has generally been applied in cases where the work stoppage is due to an action of the employer and is, therefore, tantamount to a lockout. In *Irvin Unemployment Compensation Case*, 198 Pa.Superior Ct. 308, 181 A.2d 854 (1962), the employees had returned to work under an old contract and were prepared to make a extension of that work situation when the employer flatly stated that there would be no further extension of the old collective bargaining agreement and that work could continue only on his terms. In *Unemployment Compensation Board of Review v. Borger Steel Company*, 30 Pa.Commonwealth Ct. 75, 372 A.2d 969 (1977), not only did the employer tell the union that employees should not report to work if the proposed contract was not accepted, but also the doors of the plant were locked when the employees did report to work. *Irvin* and *Borger* presented clear evidence that the employer would not accept an unconditional offer to work under the preexisting status quo, which this case does not.

The board erred in applying the futility doctrine in a case where the initial work stoppage was due to actions of the employees, where there had been no unconditional offer to return to work and where it was *not* absolutely clear that an offer, if made, would not be accepted by the management.[3] In

**3.** I disagree with the majority's conclusion that the futility doctrine is inapplicable because the replacement workers would have been laid off if an unconditional offer had been made. There is no evidence, in my view, to support that finding. Although I acknowledge that BPI laid off replacement workers when the employees made an unconditional offer on July 27, 1990, that event was too remote in time from the hiring of the permanent replacement workers to support a finding that an unconditional offer by employees would have been accepted by BPI. *See, e.g., Topelski v. Universal South Side Autos, Inc.*, 407 Pa. 339, 347–48, 180 A.2d 414, 418 (1962). Furthermore, I also recognize that the NLRB issued a complaint against BPI which may have influenced BPI's July actions. Contrary to the majority's opinion, I believe that the absence of evidence does not prove the fact.

this case, the employees failed to take the action, an unconditional offer to return to work under the status quo, which would have relieved them of the responsibility for the work stoppage. The employer's hiring of permanent replacement workers is not sufficient, in and of itself, to show that it would have been futile for the employees to make such an offer.

Accordingly, I concur in the result.

However, I agree with the majority's decision for other reasons. Because the employees failed to make an unconditional offer to return to work, their work stoppage was the cause of their unemployment. They have unavailed themselves of the futility doctrine.