SNAP–TITE, INC., Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Argued March 17, 1998.
Decided May 5, 1998.

Christopher J. Kovski, Erie, for petitioner.

Richard E. Gordon, Pittsburgh, for intervenors, William McQuiston and Merlin Morton.

---

Before DOYLE and LEADBETTER, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Snap–Tite, Inc. (Employer) appeals from an order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision granting Merlin R. Morton (Claimant), a token claimant, unemployment compensation benefits for the work weeks ending July 20, 1996, and July 27, 1996.

Claimant was a member of a union who was working under a collective bargaining agreement effective June 1, 1993, to May 31, 1996. Prior to the expiration of the collective bargaining agreement, the union and Employer attempted to negotiate a new agreement. Although the parties were unsuccessful in reaching a new agreement, the parties agreed to an extension of the expired agreement provided that the union could engage in a work stoppage if it provided Employer with 48 hours notice of such action. During the negotiations, Employer informed the union on several occasions that, if a work stoppage occurred, Employer would continue operations using permanent replacement employees. On July 16, 1996, the union exercised its right to call a work stoppage by informing Employer that its members would stop work at 3:00 p.m. on July 18, 1996. Claimant and the other union employees ceased working at that time and went out on strike.

On July 19, 1996, Employer continued operations by using permanent replacement workers and did not notify the union which, if any, of its members had been permanently replaced. On July 25, 1996, the union offered to return to work under the terms of the expired agreement, but Employer refused this offer. On July 31, 1996, Employer informed Claimant and the other members of the union that work continued to be available and that Employer continued to hire permanent replacement workers. On August 23, 1996, the union again offered to return to work under the terms of the expired agreement, but only if the permanent replacement workers were terminated. Additionally, the

union noted that Employer had replaced 44 union workers with permanent replacement workers and requested that Employer indicate which 44 union members were replaced. Employer rejected the union's offer and refused to terminate the replacement workers and, on September 4, 1996, indicated that it had no obligation to inform the union which of its members had been replaced.

Following the union's August 23, 1996 offer to return to work, a new agreement was reached which was ratified by the union's members on November 25, 1996. Employer, however, recalled only 30 of the 153 workers who had gone on strike. Although Employer did not have a sufficient number of positions available to recall all of the original workers, it never identified those workers who had been replaced by the permanent replacement workers.

On July 14, 1996, Claimant and other similarly situated employees filed for unemployment compensation benefits under the Unemployment Compensation Law (Law).[1] By a determination dated October 29, 1996, the Job Center concluded that, for the week ending July 27, 1996, Claimant was eligible for benefits, but that Claimant was ineligible for benefits under Section 402(d) of the Law, 43 P.S. § 802(d), for the week ending July 20, 1996, because Claimant's unemployment during that week was due to a labor dispute other than a lockout. Claimant appealed that decision to a referee.

On appeal by Employer, the referee concluded that Claimant was not ineligible for benefits for both weeks, i.e., the week ending July 20, 1996, as well as the week ending July 27, 1996. Specifically, the referee concluded that Employer terminated the employment relationship on July 19, 1996, when Employer began operations with permanent replacement workers without advising the union of which employees were being replaced. Thus, Section 402(d) did not apply. On appeal, the Board affirmed the referee's decision. This appeal by Employer followed.

Employer argues on appeal[2] that the Board erred by concluding that Section

---

1. Act of *December 5, 1936,* Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751–914.

2. Our standard of review is limited to determining whether necessary findings of fact were sup-

402(d) did not apply, and that the union did not make an unconditional offer to return to work which is required in order to qualify for benefits.

Section 402 of the Law provides in relevant part:

An employe shall be ineligible for compensation for any week-

. . . .

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed....

43 P.S. § 802(d). In *Canonsburg General Hospital v. Unemployment Compensation Board of Review,* 156 Pa.Cmwlth. 533, 628 A.2d 503 (1993), *aff'd per curiam,* 540 Pa. 531, 658 A.2d 790 (1995), applying our Supreme Court's decision in *Penflex v. Bryson,* 506 Pa. 274, 485 A.2d 359 (1984), this Court held that

where an employer hires permanent replacement employees, absent any evidence in the record and pertinent findings thereon that continuing work remains available to the striking workers, the case must be considered as one where the employment relationship has been severed. And, in such circumstances, the determination as to entitlement to benefits should be made under Section 402(e), not Section 402(d). We further make it clear that the burden is upon the employer to show that it advised the striking employees that despite the hiring of permanent replacements work was still available to them. **We further hold that should the employer choose to replace only some employees the burden is on it to demonstrate what employees it is replacing as that information is solely within its knowledge. Should it fail in its burden, benefits will be due all employees.**

*Canonsburg Hospital,* 628 A.2d at 510 (emphasis added).

Notwithstanding the above, Employer argues that this case is controlled by *Acme*

*Corrugated Box Co. v. Unemployment Compensation Board of Review,* 131 Pa.Cmwlth. 251, 570 A.2d 100 (1990), and *T.B. Wood's Sons Co. v. Unemployment Compensation Board of Review,* 150 Pa.Cmwlth. 217, 615 A.2d 883 (1992), *petition for allowance of appeal denied,* 534 Pa. 651, 627 A.2d 181 (1993), in which this Court stated that, under Section 402(d), a worker who makes an *unconditional* offer to return to work under the terms of an expired collective bargaining agreement cannot be denied benefits if the employer chooses to hire permanent replacement workers. *Acme Corrugated Box Co.* involved a similar situation where a union went on strike following an unsuccessful attempt to negotiate a new collective bargaining agreement. Acme then began hiring replacement workers and rejected a subsequent unconditional offer to return to work by the union. This Court held that the "original" immediate cause of the claimant's unemployment was his participation in the strike. However, following the unconditional offer to return to work by the union, the immediate cause of the claimant's unemployment was Acme's rejection of the union's unconditional offer to return to work. Thus, we held that the claimant was not ineligible for benefits under the Law.

In *T.B. Wood's Sons Co.,* a plurality opinion of this Court, the Court held that once a work stoppage occurs, a claimant must make an unconditional offer to return to work in order not to be ineligible for benefits under Section 402(d). Judge Friedman dissented from the majority opinion and Senior Judge Narick filed a concurring opinion which agreed with the result reached by the majority, but reached that conclusion based on the fact that, during the week in question, it was undisputed that the employer had not yet hired permanent replacement workers.

Based on *Acme Corrugated Box Co.* and *T.B. Wood's,* Employer argues that an unconditional offer to return to work under the expired agreement is a condition precedent to any award of benefits. However, in *Can-*

ported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Stanley Flagg & Co., Inc. v. Unemployment Compensation Board of Review,*

146 Pa.Cmwlth. 248, 605 A.2d 443 (1992), *petition for allowance of appeal denied,* 532 Pa. 648, 614 A.2d 1144 (1992).

*onsburg Hospital,* we noted that *Acme Corrugated Box Co.* did *not* establish a requirement of an unconditional offer of return to work before benefits could be awarded, as Employer presently asserts, and we also explained that the precedential value of *T.B. Wood's* as a majority opinion of this Court was limited to the conclusion reached in that case and did not include the reasoning employed to reach that conclusion. Therefore, Employer's reliance on those cases is misplaced.

Although it is clear in this case that Employer notified the union that work still remained available to its members, it is equally clear that, despite the union's request, Employer repeatedly refused to identify those workers who had been permanently replaced and indicated that it had no obligation to do so. (Reproduced Record (R.R.) at 65.) Accordingly, both the referee and the Board found as fact that "at no time ... did the employer advise the union of which union employees were being permanently replaced." (Findings of Fact No. 16; R.R. at 204, 208.) Therefore, under *Canonsburg Hospital,* Employer failed to overcome its burden of demonstrating that work was available to the union members, and the Board correctly concluded that Claimant was not ineligible for benefits during the work weeks ending July 20, 1996, and July 27, 1996.

Order affirmed.

### ORDER

**AND NOW,** May 5, 1998, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.

LEADBETTER, Judge, dissenting.

I agree with the majority that this case is directly controlled by the holding in *Canonsburg General Hospital v. Unemployment Compensation Board of Review,* 156 Pa. Cmwlth. 533, 628 A.2d 503 (1993), *aff'd per curiam,* 540 Pa. 531, 658 A.2d 790 (1995). However, because I disagree with the holding in *Canonsburg* and believe that it should be reexamined, I respectfully dissent.