**Michelle V. MATTHEWS, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 2014.
Decided March 5, 2014.

Nicholas J. Renzi, Philadelphia, for petitioner.

Maribeth Wilt–Seibert, Assistant Counsel, Harrisburg, for respondent.

Donald B. Veix, Jr., Doylestown, for intervenor Michelle Matthews Day Spa.

BEFORE: LEADBETTER, Judge, and SIMPSON, Judge, and BROBSON, Judge (P.).

OPINION BY Judge BROBSON.

Petitioner Michelle V. Matthews (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board reversed a decision of a Referee, which granted Claimant unemployment compensation benefits. Instead, the Board denied Claimant benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[1] based on willful misconduct. For the reasons set forth below, we now affirm.

Claimant filed for unemployment compensation benefits after being discharged from employment as a manager with Michelle Matthews Day Spa (Employer) on October 13, 2012. The Scranton UC Service Center (Service Center) issued a notice of determination finding Claimant ineligible for unemployment compensation benefits. (Certified Record (C.R.), Item No. 5.) Claimant appealed the Service Center's determination, and a Referee conducted an evidentiary hearing. Following the hearing, the Referee issued a decision, in which the Referee reversed the Service Center's determination and found Claimant eligible for benefits. (Reproduced Record (R.R.) at R8a.)

Employer appealed the Referee's decision to the Board, which reversed. In so doing, the Board issued its own findings of fact and conclusions of law. The Board made the following findings of fact:

1.  The claimant founded the business where she worked in 2001 and owned it through the end of May 2011.

2.  Effective June 1, 2011, the claimant sold the business but stayed on as manager. She was paid $1,059.00 per week and generally worked about 40 hours a week until October 13, 2012.

3.  When the employer purchased the business, the employer had no business experience.

4.  The employer wanted the claimant to stay on as manager and run the business with the employer essentially playing a passive role.

5.  The employer was unaware that the claimant had failed to pay any vendors until after her termination.

---

1.  Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa.Cmwlth.2008). The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

(a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 573 Pa. 594, 600, 827 A.2d 422, 425 (2003). Once an employer has met its burden, however, the burden then shifts to the claimant to show good cause as justification for the conduct considered willful. *McKeesport Hosp. v. Unemployment Comp. Bd. of Review*, 155 Pa. Cmwlth. 267, 625 A.2d 112, 114 (1993).

6. After her termination, the claimant told the employer there was an unpaid invoice on advertising and an unpaid telephone bill.

7. In November 2011, the employer acquired a license to use a business software package known as "Millennium".

8. Millennium is a complete accounting package for use at spas that allows a business to track appointments and all monies paid.

9. The employer and the claimant took a seminar on how to use Millennium.

10. The claimant told the employer after the seminar that she did not know how to use Millennium and would rather not use it.

11. The employer accepted the claimant's statement that she did not want to use Millennium and authorized the claimant to make arrangements to discontinue the license.

12. The claimant was eventually able to discontinue the license as of March 2012.

13. The employer has no policy regarding the claimant having a specific schedule when she was to be at work.

14. The employer allowed the claimant to work at the office and at home at the claimant's discretion.

15. The employer did not tell the claimant that she had to work a minimum number of hours at the office.

16. On October 18, 2012, the Pennsylvania Department of Labor & Industry, Office of Unemployment Compensation Tax Services sent the employer a statement of account that it was missing a quarterly wage report for the second quarter of 2011 and that there was a total balance due of $1,188.46 with interest.

17. The employer was unaware of any unpaid Unemployment Compensation tax until after the October 18, 2012 letter was received by the employer.

18. On October 12 or 13, the employer appeared at the spa and asked the claimant to produce the books showing the employer records.

19. The claimant kept the books on spiral bound notebooks.

20. The claimant informed the employer that the books were at home.

21. The claimant went home, retrieved the books and brought them back.

22. One of the books was marked by either the claimant or someone else as "real."

23. The other books were marked as "not real."

24. The claimant did not hide either set of books from the employer.

25. The first time the employer ever wanted to see the books was either October 12 or October 13.

26. The purpose of the "not real" books was to show reduced figures being paid to employees for the purpose of minimizing required contributions on taxes and other fees. Initially, the claimant paid 30% of the employees' wages in cash. The claimant also paid tips in cash but reported 15% of the wages as tips to the payroll service.

27. The purpose of the "real" book was to show the actual payments made.

28. The claimant and the employer had a conversation where it was agreed that the operating costs of the employer could be reduced if the tax obligations could be reduced.

29. The employer told the claimant to increase the amount of cash paid to the employees from 30% to 50%. The employer was not aware that the reason paying in cash saved money was because it involved avoiding federal, state, and/or local taxes.

30. The employer did not specifically authorize the claimant to maintain two sets of books.

31. In October of 2012, the employer told the claimant to fully report all monies paid to employees to the federal government.

32. The claimant followed the employer's instructions and after being told to fully report all monies paid, fully reported.

33. The claimant wrote a number of checks for cash.

34. The claimant used the cash from the checks to pay the employees in cash.

35. The claimant paid the employees in cash so there would be no record of the actual payments to the employees.

36. The claimant did not keep the cash from the checks for her own purposes.

37. The employer was aware that the employees were routinely paid part of their wages in cash.

38. The employer discharged the claimant for paying employees' wages and not reporting those figures to the governing authorities, keeping two sets of books, one of which was "not real" and the other one of which was "real", underpaying payroll taxes to the state and federal authorities, consistently arriving to work late, refusing to use business accounting software, and failure to pay vendors.

39. The claimant did not have good cause for her actions in underpaying taxes to the federal, state and or local governments.

(*Id.* at R1a–R4a.) The Board resolved the conflicts in the testimony, in relevant part, in favor of Employer and found Employer's testimony to be credible. (*Id.* at R4a.)

Based upon the findings of fact, the Board concluded that Employer met its burden to establish that it discharged Claimant for willful misconduct. (*Id.*) The Board reasoned that Claimant was put in charge of the business and that Employer wanted Claimant to run the business as she saw fit. (*Id.*) The Board determined that when the business was losing money, Employer wanted to find ways to cut costs and directed Claimant to reduce the cash wages paid to various employees in order to cut back on the taxes associated with those wages. (*Id.*) In addition, the Board found that Claimant credibly testified that she wrote out checks to cash for that reason. (*Id.*) The Board explained that it was a way of paying wages to employees where there would be no traceable record of those payments for reporting purposes to the Internal Revenue Service, as well as the State and/or local taxing authorities. (*Id.* at R4a–R5a.)

The Board also determined that Employer did not condone the keeping of two sets of books in order to lower illegally Employer's taxes. (*Id.* at R5a.) The Board determined that Employer had a right to assume that Claimant would conduct the business in accordance with federal, state, and local laws. (*Id.*) The Board concluded that because Claimant deliberately hid cash wages from the federal, state, and/or local government in order to deliberately lower tax payments, Claimant's actions rose to the level of willful misconduct. (*Id.*) The Board, therefore, determined

that Claimant was ineligible for benefits under Section 402(e) of the Law. Claimant then petitioned this Court for review.

On appeal,[2] Claimant argues that the Board's findings of fact are inconsistent with each other and thus do not support a conclusion that Claimant engaged in willful misconduct. Claimant also argues that the Board erred in failing to conclude that she had good cause for her actions.

■ We first address Claimant's argument that the Board's findings of fact are inconsistent with each other and thus do not support a conclusion that Claimant engaged in willful misconduct. Claimant contends that the Board's finding that Employer was unaware that the reason paying employees in cash saved money was because it involved avoiding taxes is inconsistent with its determinations that (1) Employer was aware that employees were routinely paid part of their wages in cash; (2) when the business was losing money, Employer wanted to find ways to cut costs and directed Claimant to reduce the wages paid to various employees in order to cut back on taxes associated with those wages; (3) Claimant and Employer agreed that the operating costs of Employer could be reduced if the tax obligations could be reduced; and (4) Employer told Claimant to increase the amount of cash paid to employees. Claimant contends, in essence, that given the information Employer was aware of and Employer's own conduct, Employer knew that paying employees in cash saved money because it involved avoiding taxes, and Employer participated in this payment practice and directed Claimant in this regard. Claimant further contends that in light of many of the Board's findings, the Board improperly based its conclusion on its observation that Employer had a right to assume that Claimant would conduct the business in accordance with the law, as Claimant did what Employer ordered her to do.

Although Claimant contends that the Board's findings are inconsistent and thus render its conclusion of willful misconduct erroneous, the thrust of Claimant's argument is more accurately characterized as a substantial evidence challenge.[3] Put differently, Claimant argues that given the Board's findings regarding Employer's knowledge of and participation in its method of paying employees, the Board's additional finding that Employer was unaware that the reason paying employees in cash saved money was because it involved avoiding taxes is not supported by substantial evidence. We disagree.

Although the Board made findings pertaining to Employer's awareness of the

2. This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

3. Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 94 Pa.Cmwlth. 24, 502 A.2d 738, 740 (1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 474 Pa. 351, 355, 378 A.2d 829, 831 (1977). The Board's findings of fact are conclusive on appeal only so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 506 Pa. 274, 286, 485 A.2d 359, 365 (1984).

cash payments being made to employees, Employer's actions in directing Claimant to increase such payments, and Employer's knowledge of the cash payments' ultimate effect of reducing tax obligations, the Board also found that Employer was not aware that the reason paying employees in cash saved money was because it involved avoiding taxes. The testimony of Employer's owner, Joyce D'Angelo, reveals that although she was aware of Employer's practice of paying employees partly in cash, she did not become aware of the possibility that not all of the money paid to the employees was being reported to tax authorities until she had a meeting with accountants and a detective in October 2012. (C.R., Item No. 11, at 33.) Ms. D'Angelo further testified that upon realizing this possibility, she asked Claimant whether the employees' cash payments were reported to the Internal Revenue Service. (*Id.* at 34.) According to Ms. D'Angelo, Claimant responded that not all of it was reported and that Claimant was giving employees more unreported money because Employer did not have enough money in the checking account to pay the payroll taxes owed. (*Id.*) Ms. D'Angelo further testified that she then instructed Claimant to stop the practice of paying employees in cash without reporting it to the tax authorities. (*Id.* at 35.)

■ While Claimant disputes the Board's finding that Employer was unaware that the reason paying employees cash saved money was because it involved avoiding taxes, the Board chose to believe Employer. The Board, as the ultimate fact finder, is entitled to make its own determinations as to witness credibility and evidentiary weight, and it is empowered to resolve conflicts in the evidence. *Peak v. Unemployment Comp. Bd. of Review,* 509 Pa. 267, 272, 501 A.2d 1383, 1386 (1985); *DeRiggi v. Unemployment Comp. Bd. of Review,* 856 A.2d 253, 255 (Pa. Cmwlth.2004). Moreover, this finding is not inconsistent with other findings made by the Board. That is, just because Employer was aware of and participated in the *method* by which it pays its employees, it does not follow *automatically* that Employer was aware of the *reason* for using that method. While it may seem fantastic to some that Employer was unaware that the payroll practices at issue involved underreporting of wages [4] to taxing authorities, the Board, nevertheless, credited Employer's testimony that she lacked knowledge of the impropriety of those actions. As the Board is the fact finder, we are without authority to overturn a factual finding merely because we may have reached a contrary finding.

Finally, we agree with the Board's observation that Employer had a right to assume that Claimant would conduct the business in accordance with the law. Employer had no business experience when it purchased the business and trusted Claimant, who had owned and operated the business for years, to do so. Claimant's actions in increasing cash payments to employees and keeping two sets of books showed a willful disregard for Employer's interests as well as a disregard for standards of behavior that Employer could rightfully expect of her. The Board, therefore, did not err in concluding that

---

4. We note that, depending upon the circumstances, one may "avoid" paying taxes without violating the taxing laws by advantageously structuring transactions or otherwise. On the other hand, avoidance of taxes, particularly when one purposefully underreports wages to taxing authorities, may involve illegal acts as well. It appears that the Board found that Employer was unaware that the manner by which Claimant avoided taxes was through the underreporting of wages.

Claimant's actions constituted willful misconduct.

■ We next address Claimant's argument that the Board erred in failing to conclude that she had good cause for her actions. Specifically, Claimant argues that the Board erred in concluding that she did not have good cause for keeping two sets of books and paying employees in cash to reduce Employer's tax liability. In support of this argument, Claimant contends that there are no ascertainable rules or policies regarding Employer's money management practices. Claimant further argues that Employer credibly testified that it was up to Claimant to handle employee compensation and that Claimant ran the business the same way she did before Employer purchased it. Moreover, Claimant argues that the Board's findings establish that Employer condoned Claimant's actions and how she ran the business, and Employer told Claimant to lower taxes by paying the employees more in cash. Thus, Claimant did not violate a policy of Employer or otherwise engage in willful misconduct by doing what Employer directed her to do.[5]

■ As noted above, once an employer establishes willful misconduct, the burden then shifts to the claimant to establish that she had good cause for her actions. To prove "good cause," a claimant must demonstrate that her actions were justifiable and reasonable under the circumstances.

Kelly v. Unemployment Comp. Bd. of Review, 747 A.2d 436, 439 (Pa.Cmwlth.2000). At the outset, we note that Claimant's focus on the lack of a rule or policy regarding Employer's money management practices is misplaced. Here, the Board did not deny Claimant benefits based on her violation of a work rule or policy. Rather, the Board determined, and we agree, that Claimant's actions in deliberately hiding wages from the federal, state, and/or local government in order to lower tax payments rose to the level of willful misconduct, as Employer had a right to assume that Claimant would conduct the business in accordance with the law. In other words, Claimant's actions showed a willful disregard for Employer's interests as well as a disregard for standards of behavior that Employer could rightfully expect of her.[6]

■ We also reject Claimant's argument that she established good cause for her actions because Employer condoned them and/or told her to engage in them. Claimant correctly notes that Employer wanted Claimant to run the business as she had done when she owned it. Nevertheless, Employer had the right to assume that Claimant would run the business in accordance with the law. As discussed above, Employer was not aware that the reason paying employees in cash saved money was because it involved illegally avoiding taxes that should have been paid. Thus, the Board did not err in failing to

---

5. Claimant also appears to argue that her actions constituted an accepted past practice. Although Claimant sets forth the correct legal standard for establishing an accepted past practice, her brief is devoid of any analysis as to why her actions constituted such a practice. As such, we decline to address this argument.

6. Moreover, "[a]n employer need not have an established rule where the behavioral standard is obvious and the employee's conduct is so inimical to the employer's best interests that discharge is a natural result." *Biggs v. Unemployment Comp. Bd. of Review*, 66 Pa. Cmwlth. 117, 443 A.2d 1204, 1206 n. 3 (1982). Here, it is obvious that Claimant is to comply with the law while working for Employer, and her conduct in increasing cash payments to employees and keeping two sets of books for the purpose of avoiding taxes is so inimical to Employer's best interests that discharge is a natural result.

conclude that Claimant had good cause for her actions.

Accordingly, we affirm the order of the Board.

### ORDER

AND NOW, this 5th day of March, 2014, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.